THE HONORABLE JAMES L.ROBART

1

2

3

4

5

6

7

8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11 | JOHN WORTHINGTON,
PLAINTIFF,

No.C10-00118 JLR

12

MOTION AND MEMORANDUM
OF SUPPORT FOR PRELIMINARY
INJUNCTION

13 | v.

14 | WASHINGTON STATE ATTORNEY
GENERALS OFFICE, et al

15
DEFENDANTS,

16

ORAL ARGUMENT REQUEST

**NOTE ON MOTION CALENDER**

**MARCH 12, 2010**

17

18      Plaintiff John Worthington moves this Court for a preliminary injunction, requiring

19   Defendants, Washington State Attorney General et al, to:

20      1.      Cease and desist from working under the Tahoma Narcotics Enforcement Team

21   (TNET) interlocal agreements and any other agreements to be under the control any federal

22   agency;

23      2.      Cease and desist from using forward looking infra –red (FLIR) on non-target

24   residential housing without the signed consent of non- target housing residents or probable

25   cause;

26      3.      Cease and desist from converting Washington State National Guard in title 32

status under the command and control of the Governor of Washington State into a federal status

in title 10,without an official request by the Governor of Washington State to the President for

U.S. Military assistance;

    4.    Cease and desist from using Washington State agencies, and tax dollars work to

for the U.S. Department of Defense or the U.S. Department of Justice in Washington State police

actions; and

    5.    Not destroy any of the following:

(a) All records, including but not limited to email, correspondence,
memoranda and notes, created or obtained before during and after the raid on John Worthington
on January 12,2007

 (b) All records of correspondence or other communication, including but
not limited to email, correspondence, memoranda and notes, to or from
any federal agency or employee thereof relating to the raid on John Worthington on January
12,2007

 (c) All records of correspondence or other communication, including but
not limited to email, correspondence, memoranda and notes, to or from
any state or local agency or employee thereof relating the raid on John Worthington on January
12, 2007

 (d) All records of correspondence or other communication, including but
not limited to email, correspondence, memoranda and notes, to or from
any multi-agency and/or multi-jurisdictional drug task force or employee thereof relating to the
raid on John Worthington on January 12,2007;and

    Plaintiff incorporates into this motion the declaration of John Worthington and all

exhibits attached thereto.

## INTRODUCTION

    The Defendants participating in the Tahoma Narcotics Enforcement Team, (heretofore)

TNET), claim to be working for the federal government in a federal status for the U.S.

Department of Justice. The Defendants have signed federal grants which require statements of

assurances to uphold all federal laws, federal statutes and executive orders. The Defendants have

also entered into interlocal agreements which cross designate state, county and city employees as federal agents, and signed regional task force agreements to work for the DEA. The defendants themselves have even admitted to working under contract for the U.S Department of justice.

However, in 2006, the federal funding was reduced to the point of having to shut down the Washington State Multi jurisdictional drug task forces program, so the State of Washington saved these federally leveraged Washington State multi jurisdictional drug task forces using Washington State tax dollars, to allow them to continue on in a now state sponsored "federal" status ,to leverage themselves to continue working for the "U.S. Department of Justice" and enforce a federal drug control policy. These now Washington State leveraged state, county and city "U.S Department of Justice" defendants have stated that they will "seize medical marijuana regardless of plant limit thresholds".

The Washington State Military Department and Washington State Attorney General's office Defendants have also stated that the Washington State National Guard is a federal program of federal employees working in a federal status, without the Governor having declared an emergency or making a request for U.S Military assistance, and declaring that the Washington State Military Departyment is immune from Washington State laws. In addition, the Defendants have been using forward looking infra red (FLIR), without warrants, signed consent or probable cause on Worthington and non target residential housing, and in annual sweeps to view outdoor marijuana grows..

Unless this court intervenes, Worthington and thousands of Washington State medical marijuana patients will be irreparably harmed and stand to lose the right to treat their conditions, and long term pain management with medical marijuana.  In addition, without court intervention, defendants will be unjustly converting Washington State National Guard  members into a federal status in title 10 in violation of the Posse Comitatus Act, and using  FLIR in violation of the U.S Supreme Court, and Washington State Supreme Court  Rulings.

The Plaintiff has filed a Complaint against Defendant for 1) Tort Damages. Declaratory, Prospective and Injunctive relief. Worthington seeks a preliminary injunction to preserve the status quo and prevent Worthington and others similarly situated from having to suffer irreparable harm pending the outcome at trial.

<u>FACTS</u>

The federal government and state drug control agencies met in 1996 to discuss the medical marijuana initiatives. In that meeting it was determined that the federal government did not want to amend 21 U.S.C. § 903 of the federal controlled substances act, because they did not have the resources to enforce a federal drug control policy thru the federal courts. In addition, the federal drug control agencies did not want the federal drug control policy to by implemented by the federal government because it would seem like outside interference, so ultimately it was determined that federal grant funds would be conditioned on states enforcing a federal drug control policy, and by using federally cross designated state, county and city law enforcement officers to seize medical marijuana for the DEA, and refer cases to the federal courts were special consideration is given to those cases, despite the fact that the federal courts turn down 80 percent of the drug smuggling cases out of Canada. (See Exhibit 1 in the Declaration of John Worthington)


The following agencies entered into an interlocal agreement in 1998 entitled the Tahoma Narcotics Enforcement Team. Pierce County Sheriff's Office, Puyallup Police Department, Sumner Police Department, Washington State Patrol, Pierce County Prosecutors office, DEA, Tacoma Police Department, and the Bonney Lake Police Department. (See Exhibit 2 in the Declaration of John Worthington)


Each TNET participating agency has conceded state authority to the DEA, in the

Tacoma Regional Drug task force agreement. The Injunction should also be granted for any Washington State multi jurisdictional drug task force which also has the same distinction as a DEA or federal drug task forces operating within the state framework out of the Safe and Drug Free Communities unit of the Washington Department of Commerce, formerly CTED, These Task forces are supposed to be supervised by the Washington State Patrol, according to the CTED website ,and a legislative mandate that created RCW 43.43.655. (See Exhibit 3 in the Declaration of John Worthington)

The Washington State Patrol has claimed that its participating members of TNET are part of a federal entity and are federal employees. (See Exhibit 4 in the Declaration of John Worthington)

All of the HIDTA federal grant recipients in Washington State are required to sign statements of assurances which basically state that they have to enforce all federal laws, statutes and executive orders, these statement of assurances could only be interpreted to mean that the grantee works for the U.S Department of Justice. (See Exhibit 5 in the Declaration of John Worthington)

Federal funding for the Washington State multi jurisdictional drug task force program had been reduced to the point of having to shut down the program. The State of Washington had to restore lost federal funding just to keep the Washington State Multi jurisdictional drug task forces operating , effectively converting the federally funded federal drug control policy preemption to state funded federal control policy preemption. (See Exhibit 6 in the Declaration of John Worthington)

The TNET Executive Board has declared that TNET will seize medical marijuana despite state medical marijuana thresholds. This TNET document also refers to the U.S. Department of Defense looking into Worthington's case, and shows that the U.S. Department of Defense was not acting on a request to use military Support by a Washington State counter drug agency. When warrants for requests to use military assets were requested, none were produced. This could only mean that the U.S. Department of Defense was leading the investigation or conducting its own investigation. (See Exhibit 7 in the Declaration of John Worthington)

Worthington has obtained a policy statement in a Washington State public record case from the Washington State Military Department, stating that the Washington State Counter drug program is a federal program of federal employees. This policy statement is in direct conflict with the Posse Comitatus Act, which forbids the U.S. Military from being in a state police action. (See Exhibit 8 in the Declaration of John Worthington)

The Washington State Supreme Court ruling in State v. Young, 867 P.2d 593  (Wash. 1994) and Kyllo v. United States, 533 U.S. 27 (2001) requires a warrant to establish probable cause to use flir.(See Exhibit 9 in the Declaration of John Worthington)

The practice of establishing probable cause to use FLIR on target housing should not be reason and probable cause to use FLIR on non target housing. Those Random non target citizens have reasonable expectation of privacy in their own homes. Payton v. New York, 445 U.S. 573, 589, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). In some cases multiple random non target residential housing is viewed to compare to the target house.

1   Worthington has obtained numerous warrants to use FLIR which show a pattern and

2   practice of using FLIR on non target housing without establishing probable cause for the

3   non target housing, and using FLIR for more than questionable annual sweep searches

4   for outdoor marijuana grows. In addition, FLIR was most likely used on Worthington

5   without a warrant (See Exhibit 10 in the Declaration of John Worthington)

6

7       TNET was not meant to be a separate legal entity subject to suit. (Eversole v.

8   Steele), 59 F.3d 710 (7th Cir. 1995); Hervey v. Estes, 65 F.3d 784, 792 (9th Cir. 1995);

9   Dillon v. Jefferson County Sheriff's Department, 973 F. Supp. 626 (E.D. Tex. 1997);

10  Alexander v. City of Rockwall, No. CIV. A. 3:95CV-0489, 1998 WL 684255 (N.D.

11  Tex., Sept. 29, 1998), Timberlake by Timberlake v. Benton, 786 F. Supp. 676, 682-88

12   (M.D.Tenn.1992)).Therefore, TNET can only proceed in a legal action in a joint or cooperative

13  undertaking, and not proceed in any action as a legal "federal entity" Further, *Hervey* cites two

14  cases  Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 401 n. 20,

15  99 S. Ct. 1171, 1177 n. 20, 59 L.Ed.2d 401 (1971) and Peters v. Delaware River Port Authority,

16  16 F.3d 1346, 1349-52 (3d Cir.), cert. denied, -U.S. ----, 115 S. Ct. 62, 130 L.Ed.2d 20 (1994),

17  the Supreme Court and Third Circuit respectively, concluded that intergovernmental agencies

18  were entities subject to suit. In both cases however, the agencies were created or approved by

19  acts of state legislatures. *Hervey* found that TNET has no such pedigree, ruling the agreement

20  creating TNET does not indicate from what authority it springs. "Absent some indication from

21  either state law or from the enabling document that anyone intended TNET to be a formal

22  independent entity, such as the entities in Tahoe and Peters". TNET also has a Joint Board in

23  accordance with RCW 39.34.030 with state, county and city participating members whose

24  employment status is not altered by an agreement to put the DEA in charge of TNET. The

25  Regional drug task force agreement is not an act of the Washington State legislature which

26  `would enable TNET to function as a "federal entity" The only clear legislative intent to manage

Washington State multi jurisdictional drug task forces is in RCW 43.43.655: A special narcotics enforcement unit is established within the Washington state patrol drug control assistance unit. The unit shall be coordinated between the Washington state patrol, the attorney general, and the Washington Association of Sheriffs and Police Chiefs. The initial unit shall consist of attorneys, investigators, and the necessary accountants and support staff. It is the responsibility of the unit to: (1) Conduct criminal narcotic profiteering investigation and assist with prosecutions, (2) train local undercover narcotic agents, and (3) coordinate federal, state, and local interjurisdictional narcotic investigations.(See Exhibit 11 in the Declaration of John Worthington)

## ARGUMENT

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interests". <u>Winter v. Natural Resources Defense Council, Inc 129 S. Ct. 365,374 (2008)</u>

<u>LEGAL STANDARD</u>

The Ninth Circuit recognizes two tests for demonstrating preliminary injunctive relief. The traditional test or alternative sliding scale test. <u>Casim v. Bowen 824 F .2d 791,795 (9th Cir. 1987).</u> In the traditional test the plaintiff must show : (1) Whether the plaintiff has a substantial likelihood of success of the merits; (2) Whether the plaintiff would suffer irreparable injury were an injunction not granted; (3) Whether an injunction would substantially injure other interested parties; and (4) Whether the grant of an injunction would further the public interests (in certain cases) save our <u>Sonoran, Inc v. Flowers 408 F.3d 1113,1120 9th Cir.2005.</u>Where a party demonstrates that a public interest is involved, a court must examine whether the public interest favors the Plaintiff. <u>Fund for Animals Inc. v. Lujan 962 F .2d 1391, 1400 (9th cir.1992)</u>

Alternatively a party seeking injunctive relief must show: (1) a combination of likelihood of success on the merits and the possibility of irreparable harm, or (2) that serious questions going to the merits are raised and the balance of hardships tip sharply in favor of the Plaintiff. Immigrant Assistance project of the L.A. County of Fed'n labor v. INS, 306 F. 3d 873 9th cir.2002), Sun Microsystems Inc v. Microsoft Corp. 188 F.3d 1115, 1119 (9th cir.1999), Roe v. Anderson 134 F.3d 1400, 1402 (9th cir.1998)" 'These two formulations above represent two points on a sliding scale in which the required degree of irreparable harm increases as the possibility of success decreases.' " *Roe, 134* F .3d at 1402 (quoting U.S. v. Nutri-cology, Inc. 982 F.2d 394,397 (9th Cir.); accord U.S. v. Sun Microsystems, 188 F .3d at 1119 "Thus the greater the relative hardship to the moving party, the less probability of success must be shown.' "Sun Microsystems, 188 F .3d at 1119. (Quoting Nat'l Ctr. for Immigrants rights v.INS), 743 F.2d 1365, 1369 (9th cir.1984)

LIKELIHOOD OF SUCCESS ON THE MERITS

Worthington has obtained meeting minutes from the federal drug control agencies et al, meeting in 1996 to discuss the implementation of the state medical marijuana laws. These documents uncover a policy statement on how to deal with the state medical marijuana initiatives. The intentions of the federal government to condition federal funds on states enforcing a federal drug control policy, will make it impossible for the Defendants to explain TNET policy as random case by case policy or a coincidental unintended action. Further, due to the Washington State Controlled Substances Act Washington State law enforcement already had the legal framework to confiscate marijuana. What they did not have was the legal framework to confiscate medical

marijuana. Therefore, the only purpose for the TNET interlocal agreement, and similar

agreements was to give Washington State Law enforcement the legal framework to

confiscate medical marijuana for the DEA. Worthington has also obtained policy

statements from TNET executive board meeting on February 14, 2007 showing the

description of the policy that can only be interrupted to mean that TNET will confiscate

medical marijuana regardless of "plant limit thresholds" This policy statement as written

will be impossible for TNET to dismiss as random case by case policy. Further, since

most marijuana cases are prosecuted in the state court systems, cross designation to

proceed in a federal status would only be necessary to prosecute medical marijuana

cases in a federal court in an end run around the medical marijuana initiative. In fact most

of the drug smuggling cases out of Canada are handled by the state court system.

   Prior to the meeting in 1996 in California by federal, state drug control agencies,

U.S. Congressmen and non -profit to implement the medical marijuana initiatives, the

policy of cross designating drug task forces did not exist. The TNET interlocal agreement is

proof that cross designation of state and local law enforcement was initiated in June of 1998, the

same month the Washington State medical marijuana initiative went into effect, and after

the meetings in 1996.

   Qualified immunity is lost if an employee of the TNET participating agency

commits an alleged constitutional violation "pursuant to a formal governmental

policy or a 'longstanding practice or custom which constitutes the standard operating

procedure....' " Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir.1992), cert. denied, ---

U.S. ----, 114 S. Ct. 345, 126 L.Ed.2d 310 (1993).The standard operating procedure for

TNET when dealing with medical marijuana is laid out in the TNET Executive board

meeting minutes from February 14,2007,which states that medical marijuana is still illegal

federally and that plants will be "confiscated despite plant limit thresholds". Even if the

1   civil conspiracy to undermine the Washington State medical marijuana law can not be

2   accepted by the court, the policy statement by TNET to confiscate medical marijuana with

3   mostly state funds and resources is still negligence or outright malfeasance and should be

4   redressed by the court.

5          No public meetings have been held to discuss TNET's February 14, 2007 medical

6   marijuana policy statement which is in direct conflict of the Washington State Medical

7   Marijuana Act. Further, it is extremely doubtful that the Washington State legislature

8   would have enacted such a policy in an open rule making format, nor would the

9   legislature have assigned the coordination of federal, state and local law enforcement to

10  the DEA, after creating a legal RCW for the Washington State Patrol to perform that

11  function in RCW 43.43.655:A special narcotics enforcement unit is established within the

12  Washington state patrol drug control assistance unit. The unit shall be coordinated between the

13  Washington state patrol, the attorney general, and the Washington Association of Sheriffs and

14  Police Chiefs. The initial unit shall consist of attorneys, investigators, and the necessary

15  accountants and support staff. It is the responsibility of the unit to: (1) Conduct criminal

16  narcotic profiteering investigations and assist with prosecutions, (2) train local

17  undercover narcotic agents, and (3) coordinate federal, state, and local interjurisdictional

18  narcotic investigations. [1989 c 271 § 235.].  The State of Washington even accepted a federal grant

19  to train Washington State Patrol supervisors to supervise the state multi jurisdictional drug task

20  forces..

21          In Hervey v Estes, 65 F.3d 784 (9th Cir. 1995) (holding that multi-agency drug task

22  force was "only subject to suit if the parties that created [it] intended to create a separate

23  legal entity") the Ninth Circuit ruled The agreement creating TNET does not indicate

24  from what authority it springs. Absent some indication from either state law or from the

25  enabling document that anyone intended TNET to be a formal independent entity.

26

1   Without any specific act from the Washington State legislature to create a U.S

2   Department of Justice entity with TNET, the WSP and other participating agencies of

3   TNET appear to have signed conflicting agreements to contradict the Ninth Circuit case law in

4   *Hervey* , state RCW 43.43.655, and the legislative intent which TNET and other Washington

5   State multi jurisdictional drug task forces were intended to operate under. It is also extremely

6   unlikely that the voters of Washington would have approved the undermining of the State

7   medical marijuana initiative using mostly Washington State funds and personnel without a knock

8   down drag out court battle or follow up initiative.

9        Without an Injunction TNET's medical marijuana policy could only be defined as

10  entrapment for Washington State medical marijuana patients, by violating a state law with state

11  funded federal preemption policy enforced by mostly state funded multi jurisdictional drug task

12  forces, implementing a federal drug control policy so it would not seem like "outside

13  interference". Worthington has obtained a complete document trail of the civil conspiracy to

14  undermine the Washington State Medical Marijuana Act. From the initial meetings in 1996 all

15  the way to the execution of the planned policies that arose from those initial meetings in

16  1996. Worthington has also obtained proof that FLIR is being used in violation of

17  Washington State and U.S. Supreme court rulings, evidence the Washington State

18  National Guard has declared a federal status, and the U.S Department of Defense

19  conducting its own police investigations of U.S. civilians. All of Worthington's causes of

20  action meet the heightened standards for injunctive relief, and Worthington can show that

21  it is likely to prevail on the merits of each cause of action.

22        Even if some of the State defendants are successful making arguments that they are

23  not subject to 1983 actions in federal court under the Eleventh Amendment, despite the

24  fact that they have made arguments that they are federal entities to avoid Washington

25  State Public Disclosure, they will most certainly be held accountable to the charges of

26

12

violating state laws.

## IRREPARABLE INJURIES

Worthington has become a marked man for his medical marijuana activism. Washington State multi jurisdictional drug task forces and the Washington State National Guard have demonstrated their contempt for Worthington in public disclosure documents. In addition, Worthington has already suffered from the illegal regulation of his medical treatment, and his condition of diverticulitis must be properly managed to protect against the damages from the overuse of Pharmaceutical pain products. With these agreements to work for the DEA, TNET is able to illegally regulate medical practice, interfere with the medical treatment of a physician, exercise dominion and control over Worthington's federal and state constitutional rights, strip Worthington of his only long term option for pain management and cause Worthington to live a slow and lingering death, the very essence of irreparable injuries.

In this case, Defendants should not be allowed to argue that injunctive relief is not appropriate when they continue to honor the interlocal agreements, statements of assurances, and Regional Drug Task Force agreements to work for the DEA, despite being fully aware that those agreements are putting federal agents in charge. This arrangement has led to a policy statement that the defendants are going to act as a faction of the U.S Department of Justice to seize medical marijuana despite the Washington State medical marijuana law.

### a. Worthington has an established right to protect.

Worthington has been a medical marijuana patient since 2005. Under the Washington State medical marijuana law, Worthington has a clear interest in protecting his medical treatment and rights under RCW 69.51A. Worthington and others similarly situated have a right to expect

privacy in their own homes, and rights that prevent the U.S. Military from being used against them in a state police action.

*b. Plaintiff has a well-grounded fear of immediate invasion of that right*

Worthington's declaration establishes Worthington's well-grounded fear of immediate invasion of its rights.  Defendant's actions have, therefore, caused more than just economic harm. These actions could interfere with future medical treatment and, if allowed to continue, will damage Worthington by forcing him onto pharmaceutical drugs which have already caused intestinal bleeding from a condition known as diverticulitis. Consequently, Defendant's actions demonstrate the potential for irreparable harm to Worthington.  Defendant's actions endanger the future medical treatment, personal privacy, and civil rights of Worthington and other persons similarly situated.

## SUBSTANTIALLY INJURING OTHER PARTIES

Injuries to state law enforcement would be self inflicted injuries caused by agreeing to federal grant contracts to undermine the Washington State medical marijuana law. These contracts should not have been signed nor should they have been approved as to form by the Washington State Attorney Generals office. Thousands of medical marijuana patients would be protected from a federal preemption which would not exist had it not been for the restoration of lost federal funding by the State of Washington. The will of the majority of Washington State voters would be upheld, and there would no longer be injuries to Washington State tax payers whom have had their state tax dollars diverted for federal preemption purposes.

## ADVANCEMENT OF PUBLIC INTERESTS

The Washington State voters approved the use of medical marijuana for qualifying conditions. The will of the people must be upheld and protected. As an example, if this issue involved the smoking initiative, the state counties and cities would have already

filed an injunction to force the full enforcement of the smoking initiative. However, the Medical marijuana initiative seems to be the red headed step child initiative for the Washington State Attorney Generals office, which has decided to side with their "Colleagues" in law enforcement and allow violations of the Washington State medical marijuana law,at the expense of the very tax payers that voted to pass the medical marijuana initiative. To have an initiative win the approval of the majority and not be adhered to by law enforcement is the epitome of malfeasance. The end result of this malfeasance is Entrapment, which could not be accomplished without the funding and resources of Washington State.

On the one hand Washington State has a law to allow the use of medical marijuana, while on the other state funds are being spent to undermine it, so the state can get less than one third of the money from the federal government to employ its own law enforcement to enforce a federal drug control policy so it does not seem like "outside interference" The state public interests of medical marijuana rights favor Worthington, since growing medical marijuana for medical use is codified state law, and the federal drug control policy is not. The majority of Washington State residents would not approve of using state tax dollars to enforce a federal drug control policy. The privacy of Washington State citizens in their own homes is being compromised by FLIR use, which has skirted the intent of our state and federal constitution rights protected by <u>Kyllo v. United States, 533 U.S</u>. 27 (2001) and <u>State v. Young, 867 P.2d 593 (Wash. 1994)</u>. In addition, the right to be free of having the U.S. Military used against U.S citizens as is required under the Posse Comitatus Act is also at stake.

<u>BALANCE OF HARDSHIPS</u>

1    The defendants have agreed to use Washington State tax dollars and Washington State

2    personnel to undermine the Washington State medical marijuana law for the federal

3    government, in exchange for federal funding which is no longer capable of sustaining the

4    federal grant contracts, that were created by the federal government to preempt the

5    Washington State medical marijuana law in 1996. The federal government is a two bit

6    player in enforcing controlled substances, and does not have the resources to install a top

7    down system of control. Due to that lack of federal resources to install a top down system

8    of control, the federal government has chosen not to amend 21 U.S.C. Sec. 903 of the

9    federal Controlled Substances Act, and has decided to use conditioned federal grants to

10   leverage Washington State into enforcing a federal drug control policy which does not

11    include  medical marijuana.

12        So if this motion is granted, the hardships suffered by the defendants will be

13   the inability to divert scarce state funding to continue the federal preemption of the state

14   medical marijuana law, which has lost the financial wherewithal to continue on without

15   the State of Washington restoring lost federal grant funding with Washington State tax

16   dollars. The defendants will still be able to enforce controlled substances thru the

17   Washington State Controlled Substances Act and continue to use the Washington State

18   court which prosecutes 80 percent or more of the drug cases anyway, and the federal agencies

19   will still be able to cooperate with the state agencies.

20         On the other hand if this motion is not granted, Worthington and similarly situated

21   Washington State medical marijuana patients will have their medical treatment for long

22   term pain management illegally regulated by multi jurisdictional task force agreements

23   which were written with the sole intention of undermining the Washington State medical

24   marijuana law, using the state of Washington's own tax dollars and law enforcement

25   personnel. Worthington (and similarly situated Washington State medical marijuana

26

1   patients) will be forced back onto harmful pharmaceutical products which are no longer

2   suitable for treating Worthington's pain management and will cause Worthington to

3   suffer a slow and torturing death caused by internal bleeding from years of the over use

4   of pharmaceutical products for long term pain management. In addition, the federal

5   government would be forced to allow the state's to be the testing grounds for new policies

6   to offer alternatives for patients whom have no other options for long term pain

7   management other than to suffer a slow and lingering death. The privacy of Washington

8   State citizens is also at stake, as well as the right to be free of US. Military in

9   Washington State police actions. Therefore, "the balance of equities tips in plaintiffs'

10  favor", "_Winter, 129 S.Ct.at 374_

11  ## CONCLUSION

12      As detailed above, Worthington's motion for preliminary injunction easily meets

13  every prong of both the "traditional" and "alternative sliding scale" tests. FRCP 65 (c)

14  requires a moving party to enter into a bond. However, Since Worthington and thousands

15  of Washington State medical marijuana patients' health and in some cases lives would be

16  jeopardized, Worthington is asking for a nominal bond of 1 dollar. The Defendants will

17  not suffer any harm from this injection and will simply have to perform the duties

18  required of them by Washington State law.

19      For the reasons above, Worthington requests that the court grant this motion for

20  preliminary injunction enjoining the Defendants from enforcing the TNET and similar

21  Multi Jurisdictional Drug Task force interlocal agreements or any similar agreements to

22  work for the DEA; or using FLIR thermal imaging without probable cause or a warrant as

23  required by state and federal law; and from converting the Washington State National Guard

24  to a federal status to conduct U.S. Military operations in a state police action in violation of the

25  Posse Comitatus Act.

26

1           Worthington requests that the injunction stay in effect until the pending civil action

2    against the Defendants is resolved.

3

4    DATED at Renton Washington this 12th day of February, 2010

5

6                                       By: s/ John Worthington

7

8                               JOHN WORTHINGTON Pro Se
                                4500 SE 2ND PL
                                RENTON WA.98059

9

10                       **CERTIFICATE OF SERVICE**

11

12      I certify that on the date and time indicated below, I caused to be served by the

13   manor indicated a copy of the documents and pleadings listed below upon the

14   attorneys of record for the defendants herein listed and indicated below.

15         1. Plaintiff's Motion and Memorandum in support of Motion for Preliminary
            Injunction

16

17         2. Certificate of Service

18         3. Declaration in support of Plaintiff's Motion and Memorandum in

19          support of Motion for  Preliminary  Injunction

20         4. Proposed Order granting Plaintiff's motion for Preliminary Injunction;

21

22   Attorneys for defendants;

23   ROBERT CHRISTIE                       DANIEL HAMILTON
     2100 WESTLAKE AVENUE N., SUITE 206     955 TACOMA AVENUE SOUTH, SUITE 301

24   SEATTLE, WA.98109                   TACOMA, WA. 98402-2160
     206-957-9669                              253-798-6732

25   bob@christielawgroup.com            dhamilt@co.pierce.wa.us
     STEWART ESTES                      MARK KOONTZ

26   800 FIFTH AVENUE, SUITE 4141         345 6TH STREET, SUITE 600

| | | |
|---|---|---|
| 1 | SEATTLE ,WA. 98104-3175<br>206-623-8861 | BREMERTON, WA. 98337<br>360-473-5161 |

SEATTLE ,WA. 98104-3175
206-623-8861
sestes@kbmlawyers.com

CHERYL CARLSON
333 SOUTH MERIDIAN
PUYALLUP .WA.98371
253-841-5598
ccarlson@ci.puyallup.wa.us

JEAN HOMAN
747 MARKET STREET, ROOM 1120
TACOMA, WA.98402-3767
253-591-5885
jhoman@ci.tacoma.wa.us

BREMERTON, WA. 98337
360-473-5161
mark.koontz@ci.bremerton.wa.us

ALLISON STANHOPE
 800 FIFTH AVENUE, SUITE 2000
SEATTLE WA. 98104-3188
206-464-7352
allisonc@atg.wa.gov

DATED at Renton Washington this 12th day of February, 2010

By: s/ John Worthington

JOHN WORTHINGTON Pro Se
4500 SE 2ND PL
RENTON WA.98059

19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26