# EXHIBIT 3



# TACOMA REGIONAL TASK FORCE AGREEMENT
# TACOMA, WASHINGTON
# FY 2008

This agreement is made this 30th day of September 2007 between the United States Department of Justice, Drug Enforcement Administration (hereinafter "DEA") and the Bonney Lake Police Department (hereinafter "BLPD").

Whereas there is evidence that trafficking in narcotics and dangerous drugs exists in the Pierce County, Washington area and that such illegal activity has a substantial and detrimental effect on the health and general welfare of the people of Pierce County, Washington, the parties hereto agree to the following:

1.    The Tacoma Regional Task Force will perform the activities and duties described below:

    a.    Disrupt the illicit drug traffic in the Pierce County, Washington area by immobilizing targeted violators and trafficking organizations;

    b.    Gather and report intelligence data relating to trafficking in narcotics and dangerous drugs; and

    c.    Conduct undercover operations where appropriate and engage in other traditional methods of investigation in order that the Task Force's activities will result in effective prosecution before the courts of the United States and the State of Washington.

2.    To accomplish the objectives of the Tacoma Regional Task Force, the BLPD agrees to detail one (1) experienced officer to the Tacoma Regional Task Force for a period of not less than two (2) years. During this period of assignment, the BLPD Officer will be under the direct supervision and control of DEA supervisory personnel assigned to the Task Force.

3.    The BLPD Officer assigned to the Task Force shall adhere to all DEA policies and procedures. Failure to adhere to DEA policies and procedures shall be grounds for dismissal from the Task Force.

4.  The BLPD Officer assigned to the Task Force shall be
    deputized as a Task Force Officer of DEA pursuant to
    21, U.S.C. 878.

5.  To accomplish the objectives of the Tacoma Regional
    Task Force, DEA will assign two (2) Special Agents to
    the Task Force.  DEA will also, subject to the
    availability of annually appropriated funds or any
    continuing resolution thereof, provide necessary funds
    and equipment to support the activities of the DEA
    Special Agents and the BLPD Officer assigned to the
    Task Force.  This support will include: office space,
    office supplies, travel funds, funds for the purchase
    of evidence and information, investigative equipment,
    training and other support items.

6.  During the period of assignment to the Tacoma Regional
    Task Force, the BLPD will remain responsible for
    establishing the salary and benefits, including
    overtime, of the BLPD Officer assigned to the Task
    Force and for making all payments due them.  DEA will,
    subject to availability of funds, reimburse the BLPD
    for overtime payments made by it to the BLPD Officer
    assigned to the Tacoma Regional Task Force for
    overtime, up to a sum equivalent to 25 percent of the
    salary of a GS-12, Step 1, Federal Employee, currently
    $ 15,854.25, per Officer.

7.  In no event will the BLPD charge any indirect cost
    rate to DEA for the administration or implementation
    of this agreement.

8.  The BLPD shall maintain on a current basis complete
    and accurate records and accounts of all obligations
    and expenditures of funds under this agreement in
    accordance with generally accepted accounting
    principles and instructions provided by DEA to
    facilitate on-site inspection and auditing of such
    records and accounts.

9.  The BLPD shall permit and have readily available for
    examination and auditing by DEA, the United States
    Department of Justice, the Comptroller General of the
    United States and any of their duly authorized agents
    and representatives, any and all records, documents,
    accounts, invoices, receipts or expenditures relating
    to this agreement.  The BLPD shall maintain all such
    reports and records until all audits and examinations

are completed and resolved, or for a period of three
(3) years after termination of this agreement,
whichever is sooner.

10.  The BLPD will comply with Title VI of the Civil Rights
     Act of 1964, Section 504 of the Rehabilitation Act of
     1973, the Age Discrimination Act of 1975, as amended
     and all requirements imposed or pursuant to the
     regulations of the United States Department of Justice
     implementing those laws, 28 C.F.R., Part 42, Subparts
     C, F, G, H, and I.

11.  The BLPD agrees that an authorized officer or employee
     will execute and return to DEA the attached OJP Form
     4061/6, Certification Regarding Lobbying; Debarment,
     Suspension and Other Responsibility Matters; and Drug-
     Free Workplace Requirements.  The BLPD acknowledges
     that this agreement will not take effect and no
     Federal funds will be awarded until the completed
     certification is received.

12.  When issuing statements, press releases, requests for
     proposals, bid solicitations, and other documents
     describing projects or programs funded in whole or
     part with Federal money, the BLPD shall clearly state:

     a.  The percentage of the total cost of the program
         or project which will be financed with Federal
         money and,

     b.  The dollar amount of Federal funds for the
         program or project.

13.  The term of this Agreement shall be from the date of
     signature by representatives of both parties to
     September 30, 2008.  This agreement may be terminated
     by either party on 30 days advance written notice.
     Billings for all outstanding obligations must be
     received by DEA within 90 days of the date of
     termination of this agreement.  DEA will be
     responsible only for obligations incurred by the BLPD
     during the term of this agreement.

For the Drug Enforcement Administration:

_____        _____
Arnold R. Moorin                        Date
Special Agent in Charge
Seattle Field Division


For the Bonney Lake Police Department:

_____        6/6/07
Michael Mitchell                        Date
Chief of Police
Bonney Lake Police Department

## TACOMA REGIONAL TASK FORCE AGREEMENT
## FY 2007

This agreement is made this 30th day of September 2006 between the United States Department of Justice, Drug Enforcement Administration (hereinafter "DEA"), and the Puyallup Police Department (hereinafter "PPD").

Whereas there is evidence that trafficking in narcotics and dangerous drugs exists in the Pierce County, Washington area and that such illegal activity has a substantial and detrimental effect on the health and general welfare of the people of Pierce County, Washington, the parties hereto agree to the following:

1.  The Tacoma Regional Task Force will perform the activities and duties described below:

    a.  Disrupt the illicit drug traffic in the Pierce County, Washington area by immobilizing targeted violators and trafficking organizations;

    b.  Gather and report intelligence data relating to trafficking in narcotics and dangerous drugs; and

    c.  Conduct undercover operations where appropriate and engage in other traditional methods of investigation in order that the Task Force's activities will result in effective prosecution before the courts of the United States and the State of Washington.

2.  To accomplish the objectives of the Tacoma Regional Task Force, the PPD agrees to detail one (1) experienced officer to the Tacoma Regional Task Force for a period of not less than two (2) years. During this period of assignment, the PPD Officer will be under the direct supervision and control of DEA supervisory personnel assigned to the Task Force.

3.  The PPD Officer assigned to the Task Force shall adhere to all DEA policies and procedures. Failure to adhere to DEA policies and procedures shall be grounds for dismissal from the Task Force.

4.  The PPD Officer assigned to the Task Force shall be deputized as a Task Force Officer of DEA pursuant to 21, U.S.C. 878.

5.   To accomplish the objectives of the Tacoma Regional
     Task Force, DEA will assign two (2) Special Agents to
     the Task Force.  DEA will also, subject to the
     availability of annually appropriated funds or any
     continuing resolution thereof, provide necessary funds
     and equipment to support the activities of the DEA
     Special Agents and the PPD Officer assigned to the
     Task Force.  This support will include: office space,
     office supplies, travel funds, funds for the purchase
     of evidence and information, investigative equipment,
     training and other support items.

6.   During the period of assignment to the Tacoma Regional
     Task Force, the PPD will remain responsible for
     establishing the salary and benefits, including
     overtime, of the PPD Officer assigned to the Task
     Force and for making all payments due them.  DEA will,
     subject to availability of funds, reimburse the PPD
     for overtime payments made by it to the PPD Officer
     assigned to the Tacoma Regional Task Force for
     overtime, up to a sum equivalent to 25 percent of the
     salary of a GS-12, Step 1, Federal Employee, currently
     $ 15,572.75, per Officer.

7.   In no event will the PPD charge any indirect cost rate
     to DEA for the administration or implementation of
     this agreement.

8.   The PPD shall maintain on a current basis complete and
     accurate records and accounts of all obligations and
     expenditures of funds under this agreement in
     accordance with generally accepted accounting
     principles and instructions provided by DEA to
     facilitate on-site inspection and auditing of such
     records and accounts.

9.   The PPD shall permit and have readily available for
     examination and auditing by DEA, the United States
     Department of Justice, the Comptroller General of the
     United States and any of their duly authorized agents
     and representatives, any and all records, documents,
     accounts, invoices, receipts or expenditures relating
     to this agreement.  The PPD shall maintain all such
     reports and records until all audits and examinations
     are completed and resolved, or for a period of three
     (3) years after termination of this agreement,
     whichever is sooner.

10. The PPD will comply with Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act (as incorporated in the Civil Rights Act of 1991) and all requirements imposed or pursuant to the regulations of the United States Department of Justice implementing those laws, 28 C.F.R., Part 42, Subparts C, D and F.

11. The PPD agrees that an authorized officer or employee will execute and return to DEA the attached OJP Form 4061/6, Certification Regarding Lobbying; Debarment, Suspension and Other Responsibility Matters; and Drug-Free Workplace Requirements. The PPD acknowledges that this agreement will not take effect and no Federal funds will be awarded until the completed certification is received.

12. When issuing statements, press releases, requests for proposals, bid solicitations, and other documents describing projects or programs funded in whole or part with Federal money, the PPD shall clearly state:

   a. The percentage of the total cost of the program or project which will be financed with Federal money and,

   b. The dollar amount of Federal funds for the program or project.

13. The term of this Agreement shall be from the date of signature by representatives of both parties to September 30, 2007. This agreement may be terminated by either party on 30 days advance written notice. Billings for all outstanding obligations must be received by DEA within 90 days of the date of termination of this agreement. DEA will be responsible only for obligations incurred by the PPD during the term of this agreement.

(1) Abide by the terms of the statement; and

(2) Notify the employer in writing of his or her conviction for a violation of a criminal drug statute occurring in the workplace no later than five calendar days after such conviction;

(e) Notifying the agency, in writing, within 10 calendar days after receiving notice under subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title, to: Department of Justice, Office of Justice Programs, ATTN: Control Desk, 633 Indiana Avenue, N.W., Washington, D.C. 20531. Notice shall include the identification number(s) of each affected grant;

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted-

(1) Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1973, as amended; or

(2) Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency;

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

B. The grantee may insert in the space provided below the site(s) for the performance of work done in connection with the specific grant:

Place of Performance (Street address, city, country, state, zip code)

733 Market Street

4th Floor

Tacoma, Washington, 98402

Check ☐ if there are workplace on file that are not identified here.

Section 67, 630 of the regulations provides that a grantee that is a State may elect to make one certification in each Federal fiscal year. A copy of which should be included with each application for Department of Justice funding. States and State agencies may elect to use OJP Form 4061/7.

Check ☐ if the State has elected to complete OJP Form 4061/7.

## DRUG-FREE WORKPLACE
## (GRANTEES WHO ARE INDIVIDUALS)

As required by the Drug-Free Workplace Act of 1988, and implemented at 28 CFR Part 67, Subpart F, for grantees, as defined at 28 CFR Part 67; Sections 67.615 and 67.620-

A. As a condition of the grant, I certify that I will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in condition any activity with the grant; and

B. If convinced of a criminal drug offense resulting from a violation occurring during the conduct of any grant activity, I will report the conviction, in writing, within 10 calendar days of the conviction, to: Department of Justice, Office of Justice Programs, ATTN: Control Desk, 633 Indiana Avenue, N.W., Washington, D.C. 20531.

---

As the duly authorized representative of the applicant, I hereby certify that the applicant will comply with the above certifications.

1. Grantee Name and Address:

Puyallup Police Department
Public Safety Building / 311 West Pioneer
Puyallup, Washington, 98371

2. Application Number and/or Project Name                        3. Grantee IRS/Vendor Number

Tacoma Regional Task Force

4. Typed Name and Title of Authorized Representative

Robin T. James, Chief of Police, Puyallup Police Department

5. Signature                                                     6. Date

8/3/08

CC70478FED

## TACOMA REGIONAL TASK FORCE AGREEMENT
## FY 2007

This agreement is made this 30th day of September 2006, between the United States Department of Justice, Drug Enforcement Administration (hereinafter "DEA"), and the Washington State Patrol (hereinafter "WSP").

Whereas there is evidence that trafficking in narcotics and dangerous drugs exists in the Pierce County, Washington area and that such illegal activity has a substantial and detrimental effect on the health and general welfare of the people of Pierce County, Washington, the parties hereto agree to the following:

1. The Tacoma Regional Task Force will perform the activities and duties described below:

   a. Disrupt the illicit drug traffic in the Pierce County, Washington area by immobilizing targeted violators and trafficking organizations;

   b. Gather and report intelligence data relating to trafficking in narcotics and dangerous drugs; and

   c. Conduct undercover operations where appropriate and engage in other traditional methods of investigation in order that the Task Force's activities will result in effective prosecution before the courts of the United States and the State of Washington.

2. To accomplish the objectives of the Tacoma Regional Task Force, the WSP agrees to detail two (2) experienced officers to the Tacoma Regional Task Force for a period of not less than two (2) years. During this period of assignment, the WSP Officers will be under the direct supervision and control of DEA supervisory personnel assigned to the Task Force.

3. The WSP Officers assigned to the Task Force shall adhere to all DEA policies and procedures. Failure to adhere to DEA policies and procedures shall be grounds for dismissal from the Task Force.

4. The WSP Officers assigned to the Task Force shall be deputized as Task Force Officers of DEA pursuant to 21, U.S.C. 878.

Page 1 of 4

ATTACHMENT ____1____

5.   To accomplish the objectives of the Tacoma Regional
     Task Force, DEA will assign two (2) Special Agents to
     the Task Force.  DEA will also, subject to the
     availability of annually appropriated funds or any
     continuing resolution thereof, provide necessary funds
     and equipment to support the activities of the DEA
     Special Agents and the WSP Officers assigned to the
     Task Force.  This support will include: office space,
     office supplies, travel funds, funds for the purchase
     of evidence and information, investigative equipment,
     training and other support items.

6.   During the period of assignment to the Tacoma Regional
     Task Force, the WSP will remain responsible for
     establishing the salary and benefits, including
     overtime, of the WSP Officers assigned to the Task
     Force and for making all payments due them.  DEA will,
     subject to availability of funds, reimburse the WSP
     for overtime payments made by it to the WSP Officers
     assigned to the Tacoma Regional Task Force for
     overtime, up to a sum equivalent to 25 percent of the
     salary of a GS-12, Step 1, Federal Employee, currently
     $ 15,572.75, per Officer.

7.   In no event will the WSP charge any indirect cost rate
     to DEA for the administration or implementation of
     this agreement.

8.   The WSP shall maintain on a current basis complete and
     accurate records and accounts of all obligations and
     expenditures of funds under this agreement in
     accordance with generally accepted accounting
     principles and instructions provided by DEA to
     facilitate on-site inspection and auditing of such
     records and accounts.

9.   The WSP shall permit and have readily available for
     examination and auditing by DEA, the United States
     Department of Justice, the Comptroller General of the
     United States and any of their duly authorized agents
     and representatives, any and all records, documents,
     accounts, invoices, receipts or expenditures relating
     to this agreement.  The WSP shall maintain all such
     reports and records until all audits and examinations
     are completed and resolved, or for a period of three
     (3) years after termination of this agreement,
     whichever is sooner.

10. The WSP will comply with Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act (as incorporated in the Civil Rights Act of 1991) and all requirements imposed or pursuant to the regulations of the United States Department of Justice implementing those laws, 28 C.F.R., Part 42, Subparts C, D and F.

11. The WSP agrees that an authorized officer or employee will execute and return to DEA the attached OJP Form 4061/6, Certification Regarding Lobbying; Debarment, Suspension and Other Responsibility Matters; and Drug-Free Workplace Requirements.  The WSP acknowledges that this agreement will not take effect and no Federal funds will be awarded until the completed certification is received.

12. When issuing statements, press releases, requests for proposals, bid solicitations, and other documents describing projects or programs funded in whole or part with Federal money, the WSP shall clearly state:

    a.  The percentage of the total cost of the program or project which will be financed with Federal money and,

    b.  The dollar amount of Federal funds for the program or project.

13. The term of this Agreement shall be from the date of signature by representatives of both parties to September 30, 2007.  This agreement may be terminated by either party on 30 days advance written notice. Billings for all outstanding obligations must be received by DEA within 90 days of the date of termination of this agreement.  DEA will be responsible only for obligations incurred by the WSP during the term of this agreement.

For the Drug Enforcement Administration:

_____     _____
Rodney G. Benson                  Date  10/10/06
Special Agent in Charge
Seattle Field Division


For the Washington State Patrol:

_____     _____
for John Batiste                  Date  9/22/06
Chief
Washington State Patrol


Page 4 of 4

## TACOMA REGIONAL TASK FORCE AGREEMENT
## FY 2007

This agreement is made this 30th day of September 2006, between the United States Department of Justice, Drug Enforcement Administration (hereinafter "DEA"), and the Tacoma Police Department (hereinafter "TPD").

Whereas there is evidence that trafficking in narcotics and dangerous drugs exists in the Pierce County, Washington area and that such illegal activity has a substantial and detrimental effect on the health and general welfare of the people of Pierce County, Washington, the parties hereto agree to the following:

1.  The Tacoma Regional Task Force will perform the activities and duties described below:

    a.  Disrupt the illicit drug traffic in the Pierce County, Washington area by immobilizing targeted violators and trafficking organizations;

    b.  Gather and report intelligence data relating to trafficking in narcotics and dangerous drugs; and

    c.  Conduct undercover operations where appropriate and engage in other traditional methods of investigation in order that the Task Force's activities will result in effective prosecution before the courts of the United States and the State of Washington.

2.  To accomplish the objectives of the Tacoma Regional Task Force, the TPD agrees to detail one (1) experienced officer to the Tacoma Regional Task Force for a period of not less than two (2) years.  During this period of assignment, the TPD Officer will be under the direct supervision and control of DEA supervisory personnel assigned to the Task Force.

3.  The TPD Officer assigned to the Task Force shall adhere to all DEA policies and procedures.  Failure to adhere to DEA policies and procedures shall be grounds for dismissal from the Task Force.

4.  The TPD Officer assigned to the Task Force shall be deputized as a Task Force Officer of DEA pursuant to 21, U.S.C. 878.

5. To accomplish the objectives of the Tacoma Regional Task Force, DEA will assign two (2) Special Agents to the Task Force. DEA will also, subject to the availability of annually appropriated funds or any continuing resolution thereof, provide necessary funds and equipment to support the activities of the DEA Special Agents and the TPD Officer assigned to the Task Force. This support will include: office space, office supplies, travel funds, funds for the purchase of evidence and information, investigative equipment, training and other support items.

6. During the period of assignment to the Tacoma Regional Task Force, the TPD will remain responsible for establishing the salary and benefits, including overtime, of the TPD Officer assigned to the Task Force and for making all payments due them. DEA will, subject to availability of funds, reimburse the TPD for overtime payments made by it to the TPD Officer assigned to the Tacoma Regional Task Force for overtime, up to a sum equivalent to 25 percent of the salary of a GS-12, Step 1, Federal Employee, currently $ 15,572.75, per Officer.

7. In no event will the TPD charge any indirect cost rate to DEA for the administration or implementation of this agreement.

8. The TPD shall maintain on a current basis complete and accurate records and accounts of all obligations and expenditures of funds under this agreement in accordance with generally accepted accounting principles and instructions provided by DEA to facilitate on-site inspection and auditing of such records and accounts.

9. The TPD shall permit and have readily available for examination and auditing by DEA, the United States Department of Justice, the Comptroller General of the United States and any of their duly authorized agents and representatives, any and all records, documents, accounts, invoices, receipts or expenditures relating to this agreement. The TPD shall maintain all such reports and records until all audits and examinations are completed and resolved, or for a period of three (3) years after termination of this agreement, whichever is sooner.

Page 2 of 4

10. The TPD will comply with Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act (as incorporated in the Civil Rights Act of 1991) and all requirements imposed or pursuant to the regulations of the United States Department of Justice implementing those laws, 28 C.F.R., Part 42, Subparts C, D and F.

11. The TPD agrees that an authorized officer or employee will execute and return to DEA the attached OJP Form 4061/6, Certification Regarding Lobbying; Debarment, Suspension and Other Responsibility Matters; and Drug-Free Workplace Requirements.  The TPD acknowledges that this agreement will not take effect and no Federal funds will be awarded until the completed certification is received.

12. When issuing statements, press releases, requests for proposals, bid solicitations, and other documents describing projects or programs funded in whole or part with Federal money, the TPD shall clearly state:

    a.  The percentage of the total cost of the program or project which will be financed with Federal money and,

    b.  The dollar amount of Federal funds for the program or project.

13. The term of this Agreement shall be from the date of signature by representatives of both parties to September 30, 2007.  This agreement may be terminated by either party on 30 days advance written notice. Billings for all outstanding obligations must be received by DEA within 90 days of the date of termination of this agreement.  DEA will be responsible only for obligations incurred by the TPD during the term of this agreement.

For the Drug Enforcement Administration:

_____                    _____
Rodney G. Benson                                 Date
Special Agent in Charge
Seattle Field Division


For the Tacoma Police Department:

_____                    ___2/ / 14/06____
Donald L. Ramsdell                               Date
Chief of Police
Tacoma Police Department


Approved as to form:

_____                    _____
~~Thomas R. Orr~~ Michael Smith                  Date
Police Legal Advisor
Assistant City Attorney


Page 4 of 4

_Johnson_

# STATE AND LOCAL HIDTA TASK FORCE AGREEMENT

This agreement is made this 1st day of October 2009, between the United States Department of Justice, Drug Enforcement Administration (hereinafter "DEA"), and the Renton Police Department (hereinafter "RPD").

Whereas there is evidence that trafficking in narcotics and dangerous drugs exists in the Seattle metropolitan area and that such illegal activity has a substantial and detrimental effect on the health and general welfare of the people of the Seattle metropolitan area, the parties hereto agree to the following:

1. The Seattle HIDTA Task Force Group will perform the activities and duties described below:

a. disrupt the illicit drug traffic in the Seattle metropolitan area by immobilizing targeted violators and trafficking organizations;

b. gather and report intelligence data relating to trafficking in narcotics and dangerous drugs; and

c. conduct undercover operations where appropriate and engage in other traditional methods of investigation in order that the task force's activities will result in effective prosecution before the courts of the United States and the State of Washington.

2. To accomplish the objectives of the Seattle HIDTA Task Force Group, the RPD agrees to detail one (1) experienced officer to the Seattle HIDTA Task Force Group for a period of not less than two years. During this period of assignment, the RPD officer will be under the direct supervision and control of DEA supervisory personnel assigned to the task force.

3. The RPD officer assigned to the task force shall adhere to all DEA policies and procedures. Failure to adhere to DEA policies and procedures shall be grounds for dismissal from the task force.

4. The RPD officer assigned to the task force shall be deputized as task force officers of DEA pursuant to 21 USC 878.

5. To accomplish the objectives of the Seattle HIDTA Task Force Group, DEA will assign three (3) Special Agents to the task force. DEA will also, subject to the availability of HIDTA's annually appropriated funds or any continuing resolution

COPY

thereof, provide necessary funds and equipment to support the activities of the DEA Special Agents and the RPD officer assigned to the task force. This support will include: office space, office supplies travel funds, funds for the purchase of evidence and information, investigative equipment, training and other support items.

6. During the period of assignment to the Seattle HIDTA Task Force Group, the RPD will remain responsible for establishing the salaries and benefits, including overtime, of the RPD officer assigned to the task force and for making all payments due them. HIDTA will, subject to availability of funds, reimburse the RPD for overtime payments made by it to the RPD officer assigned to the Seattle HIDTA Task Force Group for overtime, up to a sum equivalent to 25 percent of the salary of a GS-12, Step 1 (RUS) federal employee, currently $16,903.25, per officer.

7. In no event will the RPD charge any indirect cost rate to DEA for the administration or implementation of this agreement.

8. The RPD shall maintain on a current basis complete and accurate records and accounts of all obligations and expenditures of funds under this agreement in accordance with generally accepted accounting principles and instructions provided by DEA to facilitate on-site inspection and auditing of such records and accounts.

9. The RPD shall permit and have readily available for examination and auditing by DEA, the United States Department of Justice, the Comptroller General of the United States and any of their duly authorized agents and representatives, any and all records, documents, accounts, invoices, receipts or expenditures relating to this agreement. The RPD shall maintain all such reports and records until all audits and examinations are completed and resolved or for a period of three (3) years after termination of this agreement, whichever is sooner.

10. The RPD shall comply with Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, as amended, and all requirements imposed by or pursuant to the regulations of the United States Department of Justice implementing those laws, 28 C.F.R. Part 42, Subparts C, F, G, H and I.

11. The RPD agrees that an authorized officer or employee will execute and return to DEA the attached OJP Form 4061/6, Certification Regarding Lobbying; Debarment, Suspension and Other Responsibility Matters; and Drug-Free Workplace

Requirements. The RPD acknowledges that this agreement will not take effect and no federal funds will be awarded until the completed certification is received.

12. When issuing statements, press releases requests for proposals, bid solicitations and other documents describing projects or programs funded in whole or part with federal money, the RPD shall clearly state: (1) percentage of the total cost of the program or project which will be financed with federal money and (2) the dollar amount of federal funds for the program or project.

13. The RPD understands and agrees that HIDTA will provide the RPD Task Force Officer with vehicles suitable for surveillance. HIDTA through DEA will furnish mobile radios for installation in the HIDTA Task Force vehicles and HIDTA will assume the cost of installation and removal. HIDTA will be financially responsible for the purchase of fuel for the leased vehicles and for providing routine maintenance, i.e., oil changes, lubes and minor tune-ups via the HIDTA lease contractor. DEA and HIDTA procedures for reporting and investigating automobile accidents involving Official Government Vehicles (OGVs) - HIDTA lease vehicles shall apply to accidents involving the leased vehicles furnished to the RPD personnel, in addition to whatever accident reporting requirements the RPD may have.

14. While on duty and acting on task force business, the RPD officer assigned to the HIDTA task force shall be subject to all DEA and federal government rules, regulations and procedures governing the use of OGVs for home to work transportation and for personal business. The HIDTA Executive Committee acknowledges that the United States is liable for the actions of task force officer, while on duty and acting within the scope of their federal employment, to the extent permitted by the Federal Torts Claim Act, 28 U.S.C. 2401 (b) 2671-2680.

15. The term of this agreement shall be from the date of signature by representatives of both parties to September 30, 2010. This agreement may be terminated by either party on 30 days advance written notice. Billings for all outstanding obligations must be received by DEA within 90 days of the date of termination of this agreement. HIDTA will be responsible only for obligations incurred by RPD during the term of this agreement.

For the Drug Enforcement Administration:


_____ _____           Date: _____
Arnold R. Moorin
Special Agent in Charge
Seattle Field Division



For the Renton Police Department:


_K. Milosevich_____           Date: 9-1-0 9
Kevin Milosevich
Chief of Police
Renton Police Department



## Department of Commerce
Innovation is in our nature.



Search...

Programs & Services Inde

Home | Community Services | Energy Policy | Housing | International Trade & Economic Development |
Local Government | Public Works Board

Home > **Divisions** > Community Services > Programs & Services > Safe & Drug Free Communities > Task Force
Program > State Patrol Participation

**Programs &
Services**

Asset Building

Community
Services Block
Grant

Developmental
Disabilities
Council

Emergency
Services

Long Term
Care
Ombudsman

Office of Crime
Victims
Advocacy

Re-
Employment
Support
Centers

Retired Senior
Volunteers

Safe & Drug
Free
Communities

Children and
Families of
Incarcerated
Parents

Community
Mobilization
Program

Criminal
Justice
Treatment

Document
Library

Drug
Prosecution
Assistance

**State Patrol Participation**

The Department of Commerce provides federal Byrne Justice Assistance Grant (JAG)
funds to the Investigative Assistance Division of the Washington State Patrol to enhance
the effectiveness and efficiency of the multi-jurisdictional task force program. Previous
program evaluations conducted by Commerce researchers have proven the benefit of
WSP's participation, specifically related to its ability to:

1. Provide trained supervisors and detectives to task forces,
2. Facilitate the exchange of intelligence between task forces,
3. Provide technical assistance and investigative coordination,
4. Assist in monitoring and assessing task force performance; and to
5. Coordinate related training for task force personnel.

Since the inception of the task forces, WSP has provided supervisors to 11 task forces, a
investigators to 16. Like the task forces, WSP received successive yearly reductions in
JAG funding, which substantially reduced its ability to participate directly. WSP did not
receive an enhancement of general funds in 2006 and, as a result, there are now far fewe
WSP personnel assigned to task forces. WSP supervisors are currently assigned to only (
of the 20.

WSP Program Contact:
Lt. Rich Wiley
Investigative Assistance Division
(509) 353-2964

Program

Our Other
Programs

Governor's
Council on
Substance
Abuse

Justice
Assistance
Grant

Municipal
Criminal
Justice

Offender Re-
entry Program
(CTCN)

Other Links

Project Safe
Neighborhoods

Public Health
Funding

Public Safety
Research

Surveys

Task Force
Program

State Patrol
Participation

Peer Review

WorkFirst


Tools &
Resources

About the
Division

Contact the
Division

Division News

Division
Publications

Success Stories

In 2006, in response to requests from law enforcement to rescue this valuable program, Governor Christine Gregoire and Attorney General Rob McKenna worked with the state legislature to acquire an appropriation of $1,658,000 from the general fund, which when combined with federal funds, effectively restored funding to the task forces to 2004 levels beginning July 1, 2006.

**Edward Byrne**

New York City Police Officer Edward Byrne (1966-1988) was a rookie officer who was kill in the line of duty on February 26, 1988. Byrne was shot several times in the head and die instantly as he sat in his police car while on assignment protecting a drug case witness at 107th Avenue and Inwood Street in South Jamaica, Queens. The cold-blooded killing, which was apparently a plot to intimidate witnesses from testifying against drug dealers, shocked the consciousness of the city. A year after the murder, four men were convicted and sentenced to the maximum sentences of 25 years to life for the crime. Byrne was 22, single, and living in Massapequa, Long Island, at the time he was murdered. He had joine the police force the previous July, and worked at the 103rd Precinct in Jamaica, Queens.

**Documents**

2005 Task Force Achievements
2006 Task Force Achievements
**2007 Task Force Acheivements**
Critical Elements of Success for Multijurisdictional Task Forces
List of Grant Funded Multi-Jurisdictional Narcotics Task Forces

**For more information contact**

Harvey Queen

Program Manager
(360) 725-3034

### *Grant-Funded Multi-Jurisdictional Narcotics Task Forces:*

### Grays Harbor County Drug Task Force

| | |
|---|---|
| Service Area: | Grays Harbor County |
| Participating Agencies: | Aberdeen Police Department (contractor)<br>Grays Harbor County Sheriff's Office<br>Hoquiam Police Department |
| 2006-2007 Grant Award: | $167,264 |
| Operations Contact: | Undersheriff Richard Scott<br>Grays Harbor County Sheriff's Office<br>(360) 249-3711<br>soadmin@co.grays-harbor.wa.us |

### Eastside Drug Task Force

| | |
|---|---|
| Service Area: | East King County |
| Participating Agencies: | Bellevue Police Department (contractor)<br>King County Sheriff's Department<br>King County Prosecutor's Office<br>Kirkland Police Department<br>Mercer Island Police Department<br>Redmond Police Department<br>Washington National Guard |
| SFY-2007 Grant Funding: | $133,475 |
| Operations Contact: | Captain Jim Kowalczyk, Bellevue Police Department<br>(425) 452-7229<br>jkowalczy@ci.bellevue.wa.us |

### Unified Narcotics Enforcement Team

| | |
|---|---|
| Service Area: | Lewis County |
| Participating Agencies: | Centralia Police Department (contractor)<br>Chehalis Police Department<br>Lewis County Sheriff's Office<br>Lewis County Prosecutor's Office |
| SFY-2007 Grant Funding: | $186,795 |
| Operations Contact: | Deputy Chief John Boren, Centralia PD<br>(360) 330-7680<br>jboren@cityofcentralia.com |

### Olympic Peninsula Narcotics Enforcement Team

| | |
|---|---|
| Service Area: | Clallam and Jefferson Counties |
| Participating Agencies: | Clallam County Sheriff's Office (contractor)<br>Port Angeles Police Department<br>Washington State Patrol |

| SFY-2007 Grant Funding: | $175,291 |
|---|---|
| Operations Contact: | Captain Ron Cameron, Clallam County Sheriff's Office<br>(360) 417-2570<br>rcameron@co.clallam.wa.us |

## Clark-Skamania Drug Task Force

| Service Area: | Clark and Skamania Counties |
|---|---|
| Participating Agencies: | Clark County Sheriff's Office (contractor)<br>Clark County Prosecutor's Office<br>Skamania County Sheriff's Office<br>Skamania County Prosecutor's Office<br>Vancouver Police Department<br>Washington State Patrol |
| SFY-2007 Grant Funding: | $114,414 |
| Operations Contact: | Commander Rusty Warren, Clark County Sheriff's Office<br>(360) 256-5711<br>walter.warren@clark.wa.gov |

## Cowlitz-Wahkiakum Narcotics Task Force

| Service Area: | Cowlitz and Wahkiakum Counties |
|---|---|
| Participating Agencies: | Cowlitz County Sheriff's Office (contractor)<br>Cowlitz County Prosecutor's Office<br>Kelso Police Department<br>Longview Police Department<br>Wahkiakum County Sheriff's Office<br>Wahkiakum County Prosecutor's Office |
| SFY-2007 Grant Funding: | $283,172 |
| Operations Contact: | Captain Don Barnd, Longview Police Department<br>(360) 442-5803<br>don.barnd@ci.longview.wa.us |

## Interagency Narcotics Enforcement Team

| Service Area: | Grant County |
|---|---|
| Participating Agencies: | Grant County Sheriff's Office (contractor)<br>Ephrata Police Department<br>Moses Lake Police Department |
| SFY-2007 Grant Funding: | $102,072 |
| Operations Contact: | Chief Deputy Courtney Conklin, Grant County SO<br>(509) 754-2011, Ext. 468<br>cconklin@co.grant.wa.us |

## Valley Narcotics Enforcement Team

| Service Area: | South King County |
|---|---|