# EXHIBIT 9

123 Wn.2d 173, *; 867 P.2d 593, **;
1994 Wash. LEXIS 122, ***

The State of Washington, Respondent, v. Robert Alan Young, Appellant

No. 58399-4

SUPREME COURT OF WASHINGTON

123 Wn.2d 173; 867 P.2d 593; 1994 Wash. LEXIS 122

February 10, 1994, Decided
February 10, 1994, Filed

**DISPOSITION:**

Holding that the use of the infrared thermal detection device violated the defendant's privacy rights under both Const. art. 1, § 7 and the Fourth Amendment and that, without the information obtained by the infrared surveillance, the search warrant was not supported by probable cause, the court *reverses* the judgment.

**PROCEDURAL POSTURE:** Defendant was convicted of possession of marijuana with intent to distribute. Defendant's motion to suppress the evidence obtained by use of an infrared device as an illegal search was denied by the Superior Court for Snohomish County (Washington). Defendant sought review.

**OVERVIEW:** Based on tips that defendant was growing marijuana in his home, police conducted surveillance using infrared detection equipment. Based on the results of their surveillance, the police obtained a warrant, and defendant was charged and convicted of possession of marijuana with intent to manufacture or deliver. The court reversed the conviction, holding that (1) Wash. Const. art. I, § 7 contained two distinct objects of protection: a person's "private affairs" and a person's "home"; (2) the device used went well beyond an enhancement of the natural senses; (3) the information obtained by the device fell within the "private affairs" language of Wash. Const. art. I, § 7; (4) the state failed to demonstrate exigent circumstances to justify the warrantless search, and the later warrant was then lacking probable cause; and (5) the search violated both the Fourth Amendment and Wash. Const. art. I, § 7.

**OUTCOME:** The court reversed the conviction.

**OPINIONBY:**

JOHNSON

**OPINION:**

[*176] [**594] The defendant contends the warrantless infrared surveillance of his home constituted a search under article 1, section 7 of the Washington State Constitution and the fourth amendment to the United States Constitution. We agree, and reverse the defendant's [***8] conviction.

[**595] I

## Facts

On August 14, 1990, the Edmonds Police Department received an anonymous note in the mail. It stated that Mr. [*177] Robert A. Young operated "a big marijuana grow" and contained Mr. Young's name, address and telephone number.

Detective L. Paul Miller began an investigation. He confirmed the address and telephone number contained in the note belonged to Young. He checked for state and federal criminal histories on Young and found none. Detective Miller went to Young's address numerous times and observed the basement windows were consistently covered, although he never observed any bright lights in the home. Miller walked by the home on the public sidewalk, but did not detect any odor of marijuana.

Miller obtained the power consumption records for Young's home over the previous 6 years and found an abnormally high level of power consumption, and a marked increase in power consumption over the previous 3 years. Based on his prior experience in investigating indoor marijuana growing operations, he believed the power consumption increase to abnormally high levels at Young's home to be consistent with a marijuana growing operation.

A few days later, Detective [***9] Miller obtained assistance from United States Drug Enforcement Agency Special Agent Mark Hedman, who had been trained in the use of infrared thermal detection devices. An infrared device detects differences in the surface temperatures of targeted objects. Used at night, the device highlights manmade heat sources as a white color and cooler temperatures as a shade of gray. The device can detect a human form through an open window when the person is leaning against a curtain, and pressing the curtain between the window screen and his or her body. The device can also detect the warmth generated by a person leaning against a relatively thin barrier such as a plywood door.

At approximately 11:30 p.m. on August 21, 1990, Detective Miller and Agent Hedman went to Young's address and conducted a thermal surveillance of the home. The thermal detection device revealed what Hedman considered to be abnormal heating patterns. The foundation of the home was shown to be warm in certain spots, indicating the downstairs [*178] was warmer than the upstairs. The device revealed the lower portion of the chimney was warm but the upper portion was cool, and one of the two chimney vents was warm [***10] and the other one cool. If there had been a fire in the fireplace the entire chimney would have been warm.

Miller and Hedman checked the utility meter on the side of the home, and found it was also warm, indicating a load on the line. Miller and Hedman then used the thermal detection device to expose the heating patterns of other homes in the neighborhood, and compared those patterns with the heating pattern at Young's home. Hedman and Miller noted the pattern at Young's home differed from the other residences in the neighborhood. Miller concluded there was a marijuana growing operation in the home.

Based on an affidavit containing the facts described above, Detective Miller obtained a search warrant for Mr. Young's home on August 28, 1990. The warrant was executed and a quantity of marijuana was seized. Young was charged with possession of marijuana with intent to manufacture or deliver.

Prior to trial, Young moved to suppress the evidence and the motion was denied. The trial court found Young guilty on stipulated facts. We accepted Young's petition for direct review.

II

Analysis

...

Fourth Amendment

...[*189] **[14, 15]** [HN8] A search occurs for Fourth Amendment purposes when "an expectation of privacy that society is prepared to consider reasonable is infringed". People have a reasonable expectation of privacy in their own homes. *Payton v. New York*, 445 U.S. 573, 589, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980).

Additionally, like our state constitution, the federal [***32] constitution specifically protects the home: "The right of the people to be secure in their . . . houses . . . shall not be violated . . .".

U.S. Const. amend. 4. Homes enjoy a special status in federal constitutional jurisprudence. "[T]he right of a man to retreat into his own home and there be free from unreasonable governmental intrusion" stands at the "very core" of the Fourth Amendment. *Silverman v. United States*, 365 U.S. 505, 511, 5 L. Ed. 2d 734, 81 S. Ct. 679, 97 A.L.R.2d 1277 (1961). Therefore, searches and seizures in public places are treated differently than searches and seizures occurring in the home.

In contrast, *Karo* involved an electronic beeper which was taken inside a home. *Karo* contains the Supreme Court's most recent statement on the use of a sensory enhancement surveillance device on a private residence. The Court found the warrantless monitoring of the electronic beeper inside a private residence, a location not observable by the naked eye, violated the Fourth Amendment. *United States v. Karo*, 468 U.S. 705, 714, 82 L. Ed. 2d 530, 104 S. Ct. 3296 (1984).

In *Karo*, the defendant bought a can of ether, unaware a beeper had been placed inside the can by government agents. The beeper allowed the police to track the container as it traveled public roads to the defendant's home. From his home, the defendant transported the container along public roads to another defendant's home. That defendant then took the marked container to a commercial storage facility, then to a third defendant's home, and finally to a house rented by all three defendants.

[16] [**602] While in the defendants' vehicles on public roads en route to each of these locations or while in the storage facility, the Court [***35] held the monitoring of the beeper did not constitute a search. The defendants had no protected privacy interest in what could have been visually observed in these public places. *Karo*, 468 U.S. at 720-21. However, each time the container crossed the threshold of a home, the monitoring of the beeper was held to constitute a search requiring a warrant. The Court found the monitoring of the device revealed information about the interior of the home the agents could not have obtained through unaided visual surveillance of the home's exterior:

> In this case, had a [government] agent thought it useful to enter the . . . residence to verify that the ether was actually in the house and had he done so surreptitiously and without a [*191] warrant, there is little doubt that he would have engaged in an unreasonable search within the meaning of the Fourth Amendment. *For purposes of the Amendment, the result is the same where, without a warrant, the Government surreptitiously employs an electronic device to obtain information that it could not have obtained by observation from outside the curtilage of the house.*

(Italics [***36] ours.) *Karo*, 468 U.S. at 715. The agents' act of monitoring the beeper inside the home thus infringed on the homeowners' reasonable expectation of privacy, and such use constituted a search for Fourth Amendment purposes.

[17] In this case, the infrared device used was at least as intrusive as the beeper in *Karo*. In *Karo*, the beeper was not sensitive enough to reveal the can's precise location within an enclosed structure. *Karo*, 468 U.S. at 708. In contrast, the infrared device at issue here reveals the specific location of heat within the home. An infrared device need not produce the equivalent of a photographic image before it is declared intrusive under the Fourth Amendment:

> [t]he monitoring of an electronic device such as a beeper is, of course, less intrusive than a full-scale search, but it does reveal a critical fact about the interior of the premises that the Government is extremely interested in knowing and that it could not have otherwise obtained without a warrant.

*Karo*, 468 U.S. at 715. [***37] Here, like *Karo*, the information conveyed by the infrared device was critical to the government. The police relied heavily on the infrared surveillance results, and the inferences that could be drawn from them, in obtaining the search warrant.

When [***43] the police use sense-enhancing devices to obtain information from someone's home that could not be obtained by unaided observation of the exterior, they should have a search warrant. *Karo*, 468 U.S. at 714. Because the police did not obtain a warrant prior to using the device in this case, we hold the search also violated the Fourth Amendment.

. . .

Therefore, the probable cause determination must be reversed and the evidence seized under the warrant excluded. *State v. White*, 97 Wn.2d 92, 110, 640 P.2d 1061 [**605] (1982). Consequently, the defendant's conviction is reversed.

Cornell University Law School

Search Law School    Search Cornell

LII / Legal Information Institute

# Supreme Court collection

## KYLLO V. UNITED STATES (99-8508) 533 U.S. 27 (2001)

### 190 F.3d 1041, reversed and remanded.

| Syllabus | Opinion<br>[ Scalia ] | Dissent<br>[ Stevens ] |
|---|---|---|
| HTML version<br>PDF version | HTML version<br>PDF version | HTML version<br>PDF version |

### Syllabus

*NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued.*
*The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.*
*See United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 337.*

### SUPREME COURT OF THE UNITED STATES

### KYLLO v. UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 99—8508. Argued February 20, 2001–Decided June 11, 2001

Suspicious that marijuana was being grown in petitioner Kyllo's home in a triplex, agents used a thermal imaging device to scan the triplex to determine if the amount of heat emanating from it was consistent with the high-intensity lamps typically used for indoor marijuana growth. The scan showed that Kyllo's garage roof and a side wall were relatively hot compared to the rest of his home and substantially warmer than the neighboring units. Based in part on the thermal imaging, a Federal Magistrate Judge issued a warrant to search Kyllo's home, where the agents found marijuana growing. After Kyllo was indicted on a federal drug charge, he unsuccessfully moved to suppress the evidence seized from his home and then entered a conditional guilty plea. The Ninth Circuit ultimately affirmed, upholding the thermal imaging on the ground that Kyllo had shown no subjective expectation of privacy because he had made no attempt to conceal the heat escaping from his home. Even if he had, ruled the court, there was no objectively reasonable expectation of privacy because the thermal imager did not expose any intimate details of Kyllo's life, only amorphous hot spots on his home's exterior.

*Held:* Where, as here, the Government uses a device that is not in general public use, to explore details of a private home that would previously have been unknowable without

physical intrusion, the surveillance is a Fourth Amendment "search," and is presumptively unreasonable without a warrant. Pp. 3—13.

(a) The question whether a warrantless search of a home is reasonable and hence constitutional must be answered no in most instances, but the antecedent question whether a Fourth Amendment "search" has occurred is not so simple. This Court has approved warrantless visual surveillance of a home, see *California* v. *Ciraolo*, 476 U.S. 207, 213, ruling that visual observation is no "search" at all, see *Dow Chemical Co.* v. *United States*, 476 U.S. 227, 234—235, 239. In assessing when a search is not a search, the Court has adapted a principle first enunciated in *Katz* v. *United States*, 389 U.S. 347, 361: A "search" does not occur-even when its object is a house explicitly protected by the Fourth Amendment-unless the individual manifested a subjective expectation of privacy in the searched object, and society is willing to recognize that expectation as reasonable, see, *e.g.*, *California* v. *Ciraolo, supra*, at 211. Pp. 3—5.

(b) While it may be difficult to refine the *Katz* test in some instances, in the case of the search of a home's interior-the prototypical and hence most commonly litigated area of protected privacy-there is a ready criterion, with roots deep in the common law, of the minimal expectation of privacy that *exists*, and that is acknowledged to be *reasonable*. To withdraw protection of this minimum expectation would be to permit police technology to erode the privacy guaranteed by the Fourth Amendment. Thus, obtaining by sense-enhancing technology any information regarding the home's interior that could not otherwise have been obtained without physical "intrusion into a constitutionally protected area," *Silverman* v. *United States*, 365 U.S. 505, 512, constitutes a search-at least where (as here) the technology in question is not in general public use. This assures preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted. Pp. 6—7.

(c) Based on this criterion, the information obtained by the thermal imager in this case was the product of a search. The Court rejects the Government's argument that the thermal imaging must be upheld because it detected only heat radiating from the home's external surface. Such a mechanical interpretation of the Fourth Amendment was rejected in *Katz*, where the eavesdropping device in question picked up only sound waves that reached the exterior of the phone booth to which it was attached. Reversing that approach would leave the homeowner at the mercy of advancing technology-including imaging technology that could discern all human activity in the home. Also rejected is the Government's contention that the thermal imaging was constitutional because it did not detect "intimate details." Such an approach would be wrong in principle because, in the sanctity of the home, *all* details are intimate details. See *e.g.*, *United States* v. *Karo*, 468 U.S. 705; *Dow Chemical, supra*, at 238, distinguished. It would also be impractical in application, failing to provide a workable accommodation between law enforcement needs and Fourth Amendment interests. See *Oliver* v. *United States*, 466 U.S. 170, 181. Pp. 7—12.

(d) Since the imaging in this case was an unlawful search, it will remain for the District Court to determine whether, without the evidence it provided, the search warrant was supported by probable cause-and if not, whether there is any other basis for supporting admission of that evidence. Pp. 12—13.

**190 F.3d 1041, reversed and remanded.**

*Scalia, J., delivered the opinion of the Court, in which Souter, Thomas, Ginsburg, and Breyer, JJ., joined. Stevens, J., filed a dissenting opinion, in which Rehnquist, C. J., and O'Connor and Kennedy, JJ., joined.*