THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN WORTHINGTON,

        Plaintiff,

  vs.

WASHINGTON STATE ATTORNEY
GENERAL et al,

        Defendants.

No.C10-00118 JLR

PLAINTIFF'S  OPPOSITION TO
DEFENDANTS WASHINGTON
STATE ATTORNEY GENERALS
OFFICE,CHRISTINE,GREGOIRE,
ROBERT MCKENNA,WASHINGTON
STATE PATROL,JOHN BATISTE,AND
FRED BJORNBERG MOTION TO
DISMISS

NOTE ON MOTION CALENDER

APRIL 9, 2010

## I  INTRODUCTION

Comes now the plaintiff John Worthington pro se in opposition to defendants

Washington State Attorney General's Office et al Washington State Patrol et al Motion to

Dismiss filed Wednesday March 17, 2010. The defendants are trying to use a "Tabloid Defense"

to get out of obligations to Washington State laws and procedures. Fred Bjornberg feigned

confiscating the  plaintiff's medical marijuana plants for TNET, and the plaintiff found out it was

1

actually Roy Alloway that confiscated the plants for West Net and hid that evidence until after the 45 days had expired to request a hearing for the return of the plaintiff's property. Fred Bjornberg has admitted that he was not the case agent for the DEA, and the loaned servant arguments are moot. The HIDTA Interlocal Agreements, statement of assurances, and federal contracts to work for the DEA are still the root of the problem, and the plaintiff has the right to challenge them and be compensated for his losses and damages suffered. West Net and the Washington State Attorney Generals Office decided they were qualified to regulate medical practice and created their own special medical marijuana laws behind closed doors with the help of non profit groups. Local control of the medical marijuana statute ran amok, and the Attorney Generals Office let it happen without a fight. The Plaintiff wrote a study about it all and the HIDTA leveraged Washington State Multi Jurisdictional drug task forces, paid for the State of Washington after federal grant funding ran dry executed the nation wide scam on the plaintiff. The U.S. District Court should; oblige the plaintiff and deny all of the defendant's motions to dismiss, remand to the Washington State Superior Court; or allow the plaintiff the opportunity to amend the complaint to factor in newly discovered evidence, or schedule a trial date in the U.S. District Court

## II. STATEMENT OF FACTS

Washington State Attorney General's Office et al Washington State Patrol et al filed a Motion to Dismiss Wednesday, March 17, 2010. The plaintiff is filing an opposition to their Motion to Dismiss. The plaintiff request permission from the court to file an over length reply in order be thorough and to properly obtain justice, and requests the court to take judicial notice under the federal rules of evidence 201 of the attached exhibits in order to directly refute alleged facts by the defendants in their motions to dismiss.

# III.  STANDARD OF REVIEW

When reviewing motions to dismiss, courts must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." _Lane v. Halliburton_, 529 F.3d 548, 557 (5th Cir. 2008).Moreover, complaint should not be dismissed "unless the court determines that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief." _Id._; _see also_ _Castro v. U.S._, 560 F.3d 381, 386 (5th Cir. 2009). Furthermore, disputed factual issues cannot be considered under either a motion for judgment on the pleadings or under a motion to dismiss. Indeed, "[j]udgment on the pleadings is appropriate only if material facts are not in dispute and questions of law are all that remain." _Voest-Alpine Trading_ _USA Corp. v. Bank of China_, 142 F.3d 887, 891 (5th Cir. 1998); _see also_ Wright & Miller, 5C Fed. Prac. & Proc. Civ. 3d § 1368.

A document filed pro se is "to be liberally construed," _Estelle v. Gamble_ 97 (1976) and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. (internal quotation marks omitted). Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice")

## PLAUSIBILITY STANDARD

The Supreme Court's _per curiam_ opinion in Ericson v. Pardus 551 U.S._____(2007) , issued just weeks after Twomby, The Court reversed a Tenth Circuit decision that upheld the dismissal of a prisoner's § 1983 complaint for failing to state a claim on which relief could be granted[1]. The prisoner alleged he faced life threatening consequences as a result of the state's refusal to continue his treatment for Hepatitis C. Although the Tenth Circuit applied _Conley_'s no set of

---

[1] _See_ _Erickson v. Pardus_, 198 Fed.Appx. 694 (10th Cir. 2006).

facts standard, [2]  it concluded that the prisoner's allegations failed to state a claim for relief

because his complaint contained only conclusory allegations and failed to allege that "the

discontinuance of the treatment"—as opposed to the Hepatitis C itself—would cause substantial

harm to him.[3] The Supreme Court reversed. Referring to the Tenth Circuit's opinion as a stark

"departure from the liberal pleading standards set forth by Rule 8(2),"[4]  Additionally, the Court

declared that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests This call for caution is

buttressed by the Supreme Court's express blessing in _Twombly_ of the model form for pleading

negligence, which alleges simply that a defendant struck a plaintiff with his car while the

plaintiff was crossing a particular highway at a specified date and time. The Supreme

Court in _Twombly_ found these allegations provide the notice required to avoid a motion to

Dismiss.[5] The plaintiff has made specific allegations that he was legal medical marijuana

patient under RCW 69.51A, and that he did not get  his affirmative defense he was entitled under

RCW 69.51A.040 , nor was he able to get a hearing from the state to get his property back as

entitled under RCW 69.50.505,and he is entitled to relief under RCW 4.24.630.The defendants

have not claimed that the plaintiff was not a medical marijuana patient, was not entitled to an

affirmative defense, and they just blame it all on a loaned Washington State employee who has

admitted under penalty of perjury that he was not the case agent for the DEA. .

---

[2] _See id._ at 696, _quoting Hall v. Bellmon_, 935 F.2d 1106, 1109 (10th Cir. 1991) (quotation omitted).

[3] The plaintiff did claim the discontinuance of his treatment caused him harm

[4] _Erickson, supra_ note 31 at 2200.

[5] _Twombly, supra_ note 3 at ___, 127 S.Ct. at 1970 n.10.

A court may, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201:

**(b) Kinds of facts**.

**A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.**

**(d) When mandatory.**

**A court shall take judicial notice if requested by a party and supplied with the necessary information.**

(In re _Silicon Graphics Inc. Sec. Litig_., 183 F.3d 970, 986 (9th Cir. 1999); _Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001)_. For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). _United States v. City of Redwood City, 640 F.2d 963, 966(9th Cir. 1981)._

In considering a motion pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington,51 F.3d 1480, 1484 (9th Cir. 1995).

The plaintiff has removed all federal claim elements of from the complaint, and has now only brought before the court matters of State law. Accordingly, the heightened pleading standard established in **_Twombly_ and _Iqbal_** applies to all federal civil claims, does not contain citable references to state law claims. The only state to rule on _Twombly_ has failed to alter its own interpretations.[6]

---

[6] West Virginia Supreme Court declined to consider whether _Twombly_ fully replaced the prevailing _Conley_ standard and instead reaffirmed the state's use of a "no set of facts" standard.

1

# IV. AUTHORITY & ARGUMENT

2

3

The plaintiff has removed all federal claim elements of from the complaint, and has now only brought before the court matters of State law.

4

5

**Federal Rule** 302**. Applicability of State Law in Civil Actions and Proceedings**

6

7

In civil actions and proceedings, the effect of a presumption respecting a fact which is an element of a claim or defense as to which State law supplies the rule of decision is determined in accordance with State law.

8

9

Accordingly, the heightened pleading standard established in **_Twombly_ and _Iqbal_** applies to all federal cases, does not contain citable references to state law claims. Even after the federal claims have been dropped the defendants continue to wave the **_Twombly_ and _Iqbal_** magic wand in hopes of applying the federal heightened pleading standard to state cases and maters of state law.

10

11

12

13

14

On page 3 lines 1- 7 the defendants state the plaintiff factual assertions do not follow from its description of what supposedly happened. This will happen when you have law enforcement entities identifying themselves with DEA business cards claiming to be seizing something they don't actually seize because someone else is seizing it. The verbatim description of the raid simply does not match the paperwork trail which was hidden from the plaintiff. The plaintiff has learned that Washington State multi jurisdictional drug task force members can not be trusted to give factual accounts of what actually is happening at the time, and explaining what happened in the past. They have noses longer than Pinocchio that are strong enough to be sniffing luggage at any major airport or port terminal.

15

16

17

18

19

20

21

22

23

24

25

26

---

A Massachusetts Superior Court held in _Karlis v.Tradex Swiss AG_,2007 Mass.Super.LEXIS 331 (Sept. 7, 2007), that _Twombly_ had "no effect on Rule 12(b)(6) law or practice in Massachusetts." _Id._ at *12.

The defendants have gone to great lengths to argue Fred Bjornberg is federal employee on loan and employed by the federal government under contract. However, the paper trail shows that a "Tabloid Defense" was cooked up the defendants, because Fred Bjornberg stated under penalty of Perjury in a Washington State Public Records case that he was not the case agent for the action against the plaintiff, and that someone else was the case agent .Now in the federal case two years later he is now the case agent for the action against the plaintiff. Mr. Bjornberg simply cannot be all things to all Judges, and this court needs to take judicial notice.(See Exhibit 1 in the Declaration of John Worthington).

**Page 3 line 8 – page 5  line 14; federal employee Fred Bjornberg**

The plaintiff is a pro se litigant that relied upon the verbatim statements of the only identifiable members of the mob of state, county and city law enforcement agencies which participated in the raid of his home. The plaintiff tried to honestly construct this action in the best way he knew how, based on a false representation of the facts by Roy Alloway and Fred Bjornberg. The defendants on the other hand have come into the U.S. District Court with what the plaintiff will refer to as "Tabloid Defense." "Tabloid Defense" is the style of law the plaintiff has grown accustomed to when dealing with liability issues against government entities, whom will make whatever outlandish claims they have to in order to avoid any liability for their actions. The state defendant's legal representatives, the Washington State Attorney Generals Office have become particular adept at "Tabloid Defenses" and has experienced a great measure of success in Division II of the Washington State Court system using an anything and everything goes strategy. In addressing the Washington State Attorney Generals "Tabloid Defense" the plaintiff will ask the court to take judicial notice of exhibits that will tell a factual story rather than a fabricated "Tabloid Defense".

1
2
3
4
5
6
7

The plaintiff will start with the contract which the state defendants rely on as a basis for determining the scope of Fred Bjornberg's employment with the federal government. (See Exhibit 2 in the Declaration of John Worthington) The TNET interlocal agreement contains specific language on page 2,and 3 that explains who is liable for any losses, damages, or liabilities arising out of the services and activities of the unit. This language would not make Mr.Bjornberg liable under any Federal Tort Claims Act claims, and places liability upon the participating jurisdiction.

8
9

Page 2:

10
11

For the purpose of indemnification of the unit personnel and their participating jurisdictions against any losses, damages, or liabilities arising out of the services and activities of the unit, those personnel contributed by any participating jurisdiction shall be deemed to be continuing under the employment of that jurisdiction and its police department.

12
13
14

Page 3:

Each agency contributing an employee to the unit will retain that employee as an employee of the contributing agency and· will be **solely** responsible for that employee: such responsibility shall include the employee's salary and benefits, as well as all tenns " ~and conditions of employment.

15
16

With this specific language the liability remains **solely** with the participating agency.

17

The case law regarding this is clear in *Bird v. United States* 949 F2d 1079 10th Cir.1991)

18

"There were written recitations that the government would not be responsible for the negligence of the "contractor"

19
20

The U.S. Attorneys office has also made arguments in *U.S. vs. Mollie Fry and Dale Schafer* CR 5-05-238 FCD that the El Dorado County Multi jurisdictional drug task force did

21
22
23
24

not have the authority to make any agreements with Fry or Schafer, nor act on the federal government's behalf, in addressing an entrapment by estoppel defense made by Fry and Shafer. The U.S. District Court rejected the entrapment by estoppel defense, and convicted Fry and

25

Schafer. This case was another medical marijuana case regarding the function of multi

26

jurisdictional drug task forces in California in 2007.

The previous case law arguments are moot because Fred Bjornberg was not the case agent that took the plants. The plaintiff would like the court to take judicial notice of this next exhibit which will show the facts of this case. This exhibit shows that it was not Fred Bjornberg who confiscated the plants ,it was Roy Alloway of West Net  that seized the plants, which were then deposited into the Kitsap County evidence locker on 1-12-2007 @ 2000 by Poulsbo police detective John Halstead. Therefore, the only logical conclusion would be that Roy Alloway confiscated the plants for West Net, and feigned a federal action along with Fred Bjornberg, and tried to hide the raid as a federal action thru the federal courts, thereby effectively looting the plaintiff  of his valuable personal property.

(See Exhibit 3 in the Declaration of John Worthington)

The West Net interlocal agreement contains no language which cross designates any members of West Net as federal agents.(See Exhibit 4 in the declaration of John Worthington)

All the arguments in Page 3 line 8 – page 5 line 14, are thus rendered moot.

Page 5 line 16-page 8 line 8; the defendant's claim the defendant fails to state a claim. The defendants challenge the plaintiff's 'standing and personal stake in the Outcome". The plaintiff's standing is obvious, he is a Washington State medical marijuana patient who just had his medical marijuana seized and did not get an affirmative defense to recover his property, after his medical marijuana was seized by state, county and city law enforcement officer claiming to be the DEA, when it was actually seized by an Bremerton police detective assigned to West Net. The plaintiff has read the federal meetings which were the genesis of the federal contracts intended to use state and local law enforcement to seize medical marijuana for the DEA, and the plaintiff has seen the TNET Executive board meeting minutes of federacy 14, 2007, in which TNET

Executive board members describe how they will seize medical marijuana despite medical marijuana plant thresholds. The plaintiff has also seen the task forces in action up close and personal and know from personal experience that none of the task forces produce picture identification, so they could be just about anybody from anywhere, that could come back to his house at anytime, and use his tax dollars to pay for it all. Now the plaintiff has a clear picture of how any Washington State multi jurisdictional drug task force can act as a federal agency and seize medical marijuana by just having a cross designated officer in tow to insinuate a federal action. The plaintiff respectfully disagrees with the defendant's assertion that he does not have standing or a personal stake, and views TNET and the federal contracts as a credible threat to his future medical marijuana rights. The Washington State Attorney General or TNET municipalities have not issued any statements to discontinue the medical marijuana policy statements admitted to in the February 14, 2007 TNET Executive board meeting. To say that the plaintiff does not have to look over his shoulder for TNET, a TNET imposter, or another drug task force with an agreement to work for the DEA, or just another drug task force that doesn't have cross designated officers, would be an incorrect statement. The plaintiff still continues to be Washington State medical marijuana patient, and TNET, or other task forces with similar agreements still have jurisdiction anywhere in Washington State.

The defendants are relying on a slew of civil rights actions and federal claims actions to apply to a simple matter of state law compliance. The plaintiff feels obligated to reply to these federal claims cases out of fear the District Court Judge will dismiss the complaint if they are not responded to. However, the Plaintiff strongly feels that this list of federal claims cases is irrelevant and immaterial to simple questions of state law compliance, and a waste of the District Court Judges time. Never the less the plaintiff will address the cases

cited by the defendants on requesting a constitutional Article III jurisdiction for state  tort claim for violations of Washington State law.

City of Los Angeles v. Lyons: The Court held that in order to establish an actual controversy, Lyons would have to show either 1) that all Los Angeles police officers always choked citizens with whom they had encounters, or 2) that the City ordered or authorized officers to act in such a manner. Here, the state, county and city put the TNET Executive board in charge on TNET participating members, and those members are instructed by the TNET Executive board to seize all medical marijuana regardless of state medical marijuana thresholds. Now we know that West Net or any other non cross designated drug task force can seize medical marijuana too and say TNET or another cross designated task force did it. This scenario would meet the criteria established by the Court in _Lyons_.

Hodgers-Durgin v. Vina: The plaintiff has a personal stake in the ability to continue to treat his medical condition with medical marijuana rather than risk terminal internal bleeding or just suffer.. The TNET policy statement to seize medical marijuana is a permanent risk to his health.

Warth v. Seldin:  The plaintiff intended for the King County Superior Court to rule on this matter, it was the defendants that removed the case to federal court. The plaintiff has removed all of the federal claims and has asked the federal court to remand this case back to the state court.

**Court Rationale**: "The petitioners must allege specific, "concrete," facts demonstrating that the challenged practices harm him". The plaintiff has demonstrated the challenged practice of TNET or in this case West Net seizing medical marijuana despite medical marijuana thresholds ,that forced him back on to pharmaceutical products which were previously used to the point of internal bleeding. Whereas the petitioners in Warth v. Seldin claimed the policy excludes people of low to moderate income levels. There is a big difference between fighting the cause of internal bleeding and the fighting the forces of gentrification caused by zoning laws

Baker v. Carr: 3) that the City ordered or authorized officers to act in such a unconstitutional manner. Again the TNET board has instructed TNET participating members to seize all medical marijuana despite the state medical marijuana law RCW 69.51A.That policy statement is in the TNET Executive Board meeting minutes of February 14 ,2007. (See Exhibit 1 in the 5th amended complaint.)

Hodgers-Durgin v. Vina:  "based on speculation."The plaintiff's claim is based on TNET's own words in the TNET Executive Board meeting minutes of February 14 ,2007 .(See Exhibit 1 in the declaration of John Worthington) (Also listed as an exhibit in the 5th amended complaint.)

Eggar v. City of Livingstone: Again, this case cites the absence of a specific policy. TNET has issued a specific policy to seize medical marijuana despite the Washington State medical marijuana law RCW 69.51A.That policy statement is in the TNET Executive Board meeting minutes of February 14 ,2007.That policy statement enabled another drug task force to seize the plaintiffs medical marijuana

 Nelson v. King County:  A 42 U.S.C. Sec. 1983 action class action case, seeking injunctive relief and damages for alleged violations of their constitutional rights during their stays in the Center. The substance of their complaint focused on the allegedly unsanitary conditions created by a landfill located next to the Center. Nelsen and Sharp sought monetary damages for the alleged violation of their rights and an injunction to relocate the Center in an area away from the landfill. The district court, relying primarily upon *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S.Ct. 1660, 1664, 75 L.Ed.2d 675 (1983) (Lyons ), concluded that Nelsen and Bullene lacked standing to claim injunctive relief because they "failed to make a reasonable showing that they will again be subjected to the allegedly harmful conditions at the Center. The Court stated: In those circumstances where we, or the Supreme Court, have found standing to exist for a threat

of future harm, it has consistently been determined that some systematic pattern, repetition or relationship exists. In the plaintiff's case he has to use medical marijuana for long term pain management or die from internal bleeding, so the future pattern will be of continued medical marijuana use. Since the TNET policy statement to seize medical marijuana despite medical marijuana thresholds does not indicate that it will be a policy enforced only one time on each patient the threat of re-occurrence is by far more probable than not. Furthermore, there are at least three multi jurisdictional drug task forces in Washington State with identical agreements to work for the DEA, and all of these task forces have jurisdiction in all of Washington State. Even further, now it is known that West Net also used the agreement and could also be used by other drug task forces. As long as those HIDTA grants contracts and contracts to work for the DEA exists there will be an extremely high probability that those contracts will be used against the plaintiff ,and pose a real and continuous threat to the plaintiff. It has been proven also that the plaintiff is threatened by any multi jurisdictional drug task forces with money to burn to go after low priority medical marijuana patients The standing doctrine addresses the question of "whether the litigant is entitled to have the court decide the merits of the dispute." Warth v. Seldin, 422 U.S. 490,498 (1975). At its core, the standing requirement has three "irreducible constitutional[ly] minimum " elements. Lujan v. Defenders of Wildlife, 504 U.S. 555,560 (1992). First, the plaintiff must have suffered an "injury in fact"--an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a

favorable decision. The injury to the plaintiff in fact was being forced back onto pain pills that cause internal bleeding, or suffer from his condition. Each is plausible injury. The particularized, concrete legal and protected interest is the Washington State medical marijuana law RCW 69.51A, and the right to make an affirmative defense if charged under RCW 69.51A.040, Rule C.R.2.3 Rule (e) or request a hearing to return the plaintiff's property under RCW 69.50.505.These are codified state laws that every state agency is bound to abide by. The injury was a direct result of the federal HIDTA grant contracts, and the contracts to work for the DEA and seize medical marijuana despite medical marijuana thresholds, secret illegal medical marijuana plant limits, and Roy Alloway's renowned legerdermain search warrant tactics using uncorroborated criminal informant information. Therefore, the plaintiff has legitimate standing to challenge those contracts, and all other state contracts to perform in the same capacity as long as those entities have jurisdiction all over Washington State. Rural drug task forces like West Net are more inclined to go after low priority medical marijuana patients because they have less mid to upper level drug crimes to contend with and have to generate a body count or risk losing funding the following years. A favorable decision would indeed eliminate the threat of having the plaintiff's own tax dollars used against him to stop him from exercising his state law rights to use medical marijuana rather than risk death from internal bleeding or simply live a slow and lingering death.

Page 8 line 9-page 9 line7: Roy Alloway did seize the plants Fred Bjornberg just feigned doing so, while Poulsbo detective John Halstead loaded the plants into the Kitsap County Storage locker where there is no paper trail of them going anywhere else.

Page 9 line 9-line13; the plaintiff's claim is a state tort claim which cites valid Washington State laws, and does not rely on constitutional arguments. This section is moot,

irrelevant and completely immaterial. The 14th Amendment arguments were dropped.

Page 9 line 14-page 10 line-22; the defendant's rely on _State v. Fry_ No. 81210-1

retroactively, to somehow get by the _Aguilar-Spinelli_ Test, which is based on the Washington

State constitution. In _State v. Fry_ the State Supreme Court confirms that the plaintiff was entitled

an affirmative defense, which he did not get. Nothing else about _State v. Fry_ is relevant to this

action; the circumstances are not even close to being the same. There is no case law in _State v._

_Fry_ that enables law enforcement in Washington State to avoid the _Aguilar-Spinelli_ Test, or

avoid the affirmative defense in RCW 69.561A.040, RULE 2.3 (e) or RCW 69.50.505.When the

defendants came to the plaintiff's door with medical marijuana authorization in hand, they had

no idea that the plaintiff was growing medical marijuana, after all he could have had a designated

provider growing it for him. Additionally, the defendants never claimed to have smelled

marijuana as a means to establish probable cause, they used a criminal informant that claimed to

know someone named "Big John" and a half baked scheme that the plaintiff was part of a

trumped up partnership operating unmanned grows from a previous West Net case. The

defendants are using _State v. Fry_ as 2010 retroactive Hail Mary remedy for an act committed in

2007.

The defendants have established a pattern and practice of giving Kitsap County Judges

wild fish stories about conspiracies of organized crime marijuana distribution that take a

combined total of plants from a group of loosely associated persons to push the plant numbers up

enough to attract the attention of a federal prosecutor, then apply West Nets.27 plant limit as a

means to summon the DEA, which ends up being cross designated state, county or city law

enforcement agencies. They then offer a state plea of guilty for violating a phony 27 plant limit

under the threat of going federal to face federal minimum sentence guidelines That is what the

plaintiff complained was happening to others before him, and that is exactly what the defendants did to the plaintiff.

Page 11 line 1-line 7; *Aguilar-Spinelli* is still applicable in Washington State; the Kings men are still not allowed to go door to door; Roy Alloway seized the plants for West Net; and the alleged Fred Bjornberg just pretended he was confiscating the plants, while West Net's John Halstead admitted to loading the plants in a Kitsap County storage locker..No federal prosecutor would touch the highly publicized raid with a ten foot pole, and the plants remained in the Kitsap County storage locker, unbeknownst to the plaintiff until it was too late to recover his rightful property,  which more than likely would have been required to be returned to him.

Page 11 line 9- page 13 line 13; OPMA. The plaintiff was never notified of any public meeting to determine if Washington State tax dollars would be used to work for the DEA, or develop any legal RCW or subordinate county or city law. The defendants were required to notify the public and hold a hearing when they developed those policies. The OPMA covers Boards, which would include the TNET Executive board meetings and the West Net Policy Board. We make laws a certain way here in Washington State, and the defendants made their own laws in their own way, and used our state tax dollars for a purpose not authorized by state law. These state law enforcement agencies not only violated the OPMA, they also violated the Washington State constitution:

**ARTICLE II**
**LEGISLATIVE DEPARTMENT**

**SECTION 18 STYLE OF LAWS.** The style of the laws of the state shall be: "Be it enacted by the Legislature of the State of Washington." And no laws shall be enacted except by bill.

When the West Net defendants spent state tax dollars enforcing a 27 plant limit which was

not authorized by state law they committed a felony.

# ARTICLE XI
## COUNTY, CITY, AND TOWNSHIP ORGANIZATION

**SECTION 14 PRIVATE USE OF PUBLIC FUNDS PROHIBITED.** The making of profit out of county, city, town, or other public money, or using the same for any purpose not authorized by law, by any officer having the possession or control thereof, shall be a felony, and shall be prosecuted and punished as prescribed by law.

The problem is these law enforcement agencies think they are federal, and think they can claim a separate sovereignty to function in a federal status, and take our state tax dollars with them when they do. In the case of West Net's 27 plant limit they created a separate sovereignty from federal and state, as the federal government did not recognize medical marijuana at all, and the State of Washington did not have a legal plant limit until November of 2008. The plaintiff did not discover the Washington State Attorney Generals Office meetings held at the offices of the ACLU until 2008, and should have until 2011 to Act on the violation Boards are included in the OPMA. Instead of meeting in private to develop medical marijuana policies they should have notified the public and help open meeting just the same way the current legal medical marijuana WAC 246-75-010 was formed. The OPMA claim should stand.

(See Exhibit 5 in the Declaration of John Worthington)

Page 14 line 14-19 Timber Trespass: Page 19 line 2.The statute does not require the plaintiff to be owner of the land. The defendant has not provided the specific language in the statute to back up that claim. The plaintiff has done extensive case law research on the topic, and feels the case law supports his claim. The plaintiff feels that personal property is a better description than a scrub, and the Timber trespass statute is more clearly defined for tree's and bushes, whereas the 1994 statute RCW 4.24.630 speaks more clearly to property. Since the 1994 RCW 4.24.630 statute speaks to valuable property, and in the defendants own words the timber trespass was not

intended for marijuana, the 1994 RCW 4.24.630 statute should be relied on. However, the case law regarding the old timber trespass law should be referenced to establish well decided issues like occupant- actual possession, and dominion and control. Not only does the language of either statute not specify in the statues that only land owners are entitled to the provision of the law, the language does not specify that the statute was not applicable to medical marijuana or show an amendment to exclude medical marijuana. The plaintiff asserts that his plants would be covered under the wrongly injures personal property. Since the language is silent regarding land owners being the only ones entitled to relief, the plaintiff asks the court to rely on the case law which has sorted these issues out over the years.

### GORDON v. ROSS-HIGGINS CO. et al.162 F. 637; 1908 U.S. App. LEXIS 4479 (9th Cir.1908)

"'Actual possession' of land consists in subjecting it to the will and dominion of the occupant, and must be evidenced by those things which are essential to its beneficial use. Justice to the community also requires in the circumstances of this country that the extent of the claim should be clearly defined, and that the possession should be open, notorious, and continuous."

### Birchler v. Castello Land Co., 133 Wn.2d 106, 942 P.2d 968 (1997). ...

This state has indeed recognized that damages for inconvenience, discomfort and mental anguish may result from an intentional interference with property interests.

Accord Pepper v. J.J. Welcome Constr. Co., 73 Wash.App. 523, 547, 871 P.2d 601, review denied, 124 Wash.2d 1029, 883 P.2d 326 (1994).   We agree and apply this general principle in actions under RCW 64.12.030.   Such emotional distress damages must, of course, be based on more than mere theory or speculation.   Pepper, 73 Wash.App. at 547-48, 871 P.2d 601; Nord, 116 Wash.2d at 484, 805 P.2d 800.

There is nothing in the history of the timber trespass statute to suggest it subsumes all other causes of action that may exist in conjunction with a timber trespass

In closing the plaintiff's "personal property should have been preserved until the plaintiff

could have obtained a hearing and recovered his property. Since West Net could not get the federal court to take the plaintiff's case, the plants should have been deposited in the Kitsap County court where the plaintiff could be charged or could have requested a hearing to get his seized property back. Since West Net and TNET played a game of hide the ball behind the fed, the personal property was wrongfully injured. Hemp was grown as far back as the timber statute itself ,and was considered to be just as valuable as corn, and even more valuable to the war effort in the Hemp for Victory campaigns, there is absolutely no evidence that the timber trespass law as not intended for marijuana. The plaintiff is also entitled to emotional distress relief from the statute even though he has not listed it in the action.. The RCW 4.24.630 claim should stand. Page 13 line 20-14 line 3; Declaratory Judgment: In *Mayfield v. United States*, 504 F. Supp. 2d 1023 (D. Or. 2007). The district court determined that it had jurisdiction because there was a live case or controversy that could be redressed with a declaratory judgment. *Id*. at 1034. Here, the controversy is a medical marijuana law provision that guarantee's an affirmative defense ,and a state funded and enabled multi jurisdictional drug task force with agreements to work for the DEA, and seize medical marijuana despite the state law. Even if the plaintiff was not charged, the task force West Net had an obligation to deposit the plants in the state court since the federal court refused to take the case. West Net hid behind or feigned a federal action until the 45 days to request a hearing had past. This is a description of looting the plaintiff. If this policy is allowed to continue, the only real provision of the medical marijuana law that the plaintiff can hang his hat on would be undermined perpetually. The court can help to identify any state laws or state contracts that create a conflict with the Washington State medical marijuana law and either redress the situation by repealing the conflicting law by implication or find that the defendant's are guilty of malfeasance. To go further, the plaintiff was allowed to grow medical

marijuana by the state, the federal government had no resources to prevent him from exercising his rights under the State law, so the state of Washington steps in and funds the federalization of their multi jurisdictional drug task forces themselves, and" loans" them to the DEA, under a TNET contract which states the members remain employed by the participating agencies, and to do their job for them with the plaintiff's own tax dollars. They have two words for that kind of controversy it is called malfeasance and entrapment. The court could break this all up and repeal one law or the other or find the defendants in contempt of the Washington State medical marijuana law and the will of the people. *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001). In *Armstrong*, the 9th Circuit enumerated two ways in which a plaintiff can demonstrate that such injury is likely to recur. *Id*. "First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, *Mayfield v. United States* 16353 and that the injury 'stems from' that policy." *Id*. "Second, the plaintiff may demonstrate that the harm is part of a 'pattern of officially sanctioned . . . behavior, violative of the plaintiffs [federal] rights.' " *Id*. (quoting *LaDuke v. Nelson*, 762 F.2d 1318, 1323 (9th Cir. 1985))

The Written policy is the TNET Executive Board meeting minutes of February 14, 2007, (See Exhibit 1 in the declaration of John Worthington) (Also listed as an exhibit in the 5th amended complaint.) and is officially sanction by all TNET Executive Board members, for even West Net to use, and most likely the Skagit County Multi Jurisdictional drug task force, and the Spokane Regional Drug task force, which have the same DEA contracts.

To establish standing, a plaintiff must also show that a favorable decision will likely redress his injury. *Defenders of Wildlife*, 504 U.S. at 560; *Levine v. Vilsack*, ___ F.3d ___,2009 WL 3925075, at *4 (9th Cir. Nov. 20, 2009); *Chapman v. Pier 1 Imports (U.S.) Inc.*, 571 F.3d 853, 857 (9th Cir.2009). When the lawsuit at issue challenges the legality of government action, and

the plaintiff has been the object of the action, then it is presumed that a judgment preventing the action will redress his injury. *Defenders of Wildlife*, 504 U.S.at 561-62. Here, the plaintiff seeks declaratory relief against the type of government action that indisputably caused him injury. He is thus entitled to a presumption of redressability.

**Personam jurisdiction**

The plaintiff has served all of the municipalities in the proper location to commence a state tort claim in Washington State**. (See** Exhibit 3 in the declaration of John Worthington**)**

**RCW 4.28.080**
(1) If the action be against any county in this state, to the county auditor or, during normal office hours, to the deputy auditor, or in the case of a charter county, summons may be served upon the agent, if any, designated by the legislative authority.
(2) If against any town or incorporated city in the state, to the mayor, city manager, or, during normal office hours, to the mayor's or city manager's designated agent or the city clerk thereof.

Since the federal civil rights claims have been dropped, and the plaintiff is pursuing only state claims the plaintiff was only obligated to serve the state defendants at the Washington State Attorney Generals office which he did. The Washington State Patrol was served as well. Service was proper and the court has proper jurisdiction to consider this Washington State tort claim and declaratory relief..

 **(See** Exhibit 3 in the declaration of John Worthington**)**

# V. CONCLUSION

Based on the statements above the;

DEFENDANT'S WASHINGTON STATE ATTORNEY GENERALS OFFICE, CHRISTINE GREGOIRE,ROBERT MCKENNA,WASHINGTON STATE PATROL JOHN BATISTE,AND FRED BJORNBERG MOTION TO DISMISS,

 Should be **DENIED**

# VI.PROPOSED ORDER

Proposed order is attached.

DATED at Renton Washington this 28th day of March, 2010

By: s/ John Worthington
JOHN WORTHINGTON Pro Se
4500 SE 2ND PL
RENTON WA.98059

## Certificate of Service

I certify that on the date and time indicated below, I caused to be served electronically a

copy of the documents and pleadings listed below upon the attorneys of record

for the defendants herein listed and indicated below.

1. PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANTS WASHINGTON
   STATE ATTORNEY GENERALS OFFICE, CHRISTINE GREGOIRE, ROBERT
   MCKENNA, WASHINGTON STATE PATROL, AND JOHN BATISTE MOTION TO
   DISMISS;
2. CERTIFICATE OF SERVICE;
3. DECLARATION OF JOHN WORTHINGTON;
4. EXHIBITS 1-6;
5. PROPOSED ORDER GRANTING PLAINTIFF'S MOTION IN OPPOSITION
   TO DEFENDANTS WASHINGTON STATE ATTORNEY GENERALS
   OFFICE, CHRISTINE GREGOIRE, ROBERT MCKENNA, WASHINGTON STATE
   PATROL AND JOHN BATISTE MOTION TO DISMISS

Attorneys for defendants

ROBERT CHRISTIE
2100 WESTLAKE AVENUE N., SUITE 206
SEATTLE, WA.98109
206-957-9669
bob@christielawgroup.com

DANIEL HAMILTON
955 TACOMA AVENUE SOUTH, SUITE 301
TACOMA, WA. 98402-2160
253-798-6732
dhamilt@co.pierce.wa.us

STEWART ESTES
800 FIFTH AVENUE, SUITE 4141
SEATTLE ,WA. 98104-3175
206-623-8861
sestes@kbmlawyers.com

MARK KOONTZ
345 6TH STREET, SUITE 600
BREMERTON, WA. 98337
360-473-5161
mark.koontz@ci.bremerton.wa.us

CHERYL CARLSON
333 SOUTH MERIDIAN
PUYALLUP .WA.98371
253-841-5598
ccarlson@ci.puyallup.wa.us

ALLISON STANHOPE
800 FIFTH AVENUE, SUITE 2000
SEATTLE WA. 98104-3188
206-464-7352
allisonc@atg.wa.gov

| | | |
|---|---|---|
| 1 | JEAN HOMAN | Kayla C. Stahman |
| 2 | 747 MARKET STREET, ROOM 1120<br>TACOMA, WA.98402-3767 | 700 Stewart street, suite 5220<br>Seattle WA.98101-1271 |
| | 253-591-5885 | 206-553-7970 |
| 3 | jhoman@ci.tacoma.wa.us | Kayla.stahman@usdoj.gov |

I declare under penalty of perjury under the laws of the United States that the foregoing is

True and correct.

DATED at Renton Washington this 28th day of March, 2010

By: s/ John Worthington

JOHN WORTHINGTON Pro Se
4500 SE 2ND PL
RENTON WA.98059